# United States Court of Appeals for the Federal Circuit

05-7019

DENNIS R. THOMAS,

Claimant-Appellant,

v.

R. JAMES NICHOLSON,
Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant. On the brief was John F. Cameron, of Montgomery, Alabama.

Steven M. Mager, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director and Mark A. Melnick, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Acting Assistant General Counsel and Y. Ken Lee, Attorney, United States Department of Veterans Affairs. Of counsel was Jamie L. Mueller.

Appealed from: United States Court of Appeals for Veterans Claims

Retired Judge Kenneth B. Kramer

# United States Court of Appeals for the Federal Circuit

05-7019

DENNIS R. THOMAS,

Claimant-Appellant,

v.

R. JAMES NICHOLSON,
Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  September 9, 2005

_____

Before CLEVENGER, GAJARSA, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Dennis R. Thomas ("Thomas") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") that affirmed a decision by the Board of Veterans' Appeals ("Board") denying Thomas's service-connected disability claim.  <u>Thomas v. Principi</u>,[1] No. 00-844 (Vet. App. Apr. 12, 2004) ("<u>Thomas I</u>").  On appeal, Thomas argues that the Veterans Court improperly interpreted 38 U.S.C. § 105(a) by disregarding a presumption of service-connection for Thomas's injuries that occurred in the line of duty and by not requiring "clear and convincing evidence" from the Secretary of Veterans Affairs ("government") to rebut this presumption.  Additionally,

---

[1]  R. James Nicholson became Secretary of Veterans Affairs on February 1, 2005, replacing Anthony J. Principi.

Thomas argues that the Veterans Court improperly interpreted 38 C.F.R. § 3.103(c)(2) regarding the duties of the Department of Veterans Affairs ("VA") hearing officer. The government responds that the Veterans Court properly affirmed the Board's decision because the § 105(a) presumption can be rebutted by a "preponderance of the evidence" showing that Thomas's actions constituted willful misconduct and were the proximate cause of his injuries. We agree, concluding that a "preponderance of evidence" establishing willful misconduct is sufficient to rebut a presumption of service-connection for peacetime disabilities under § 105(a) and further that the Veterans Court properly interpreted § 3.103(c)(2). Therefore, we affirm the Veterans Court's decision.

## I. BACKGROUND

Thomas served on active duty in the United States Navy from October 1965 until July 1968, in the United States Army from July 1971 until October 1972, and in the Alabama Army National Guard from July 31, 1993 until August 14, 1993. Thomas v. Principi, No. 96-45-431, slip op. at 2 (B.V.A. Jan. 24, 2000) ("Thomas II"). On August 13, 1993, Thomas was involved in the altercation with a service member referred to as "F.B." Id. at 5. Thomas contends that he witnessed F.B. with an unauthorized woman in the barracks and told him that the female visitor was required to leave. Id. When F.B. indicated that he would not obey Thomas's order, Thomas went to get the Platoon Sergeant. Id. Thomas contends that when he and the Platoon Sergeant returned to the barracks, F.B. yelled at and ran towards Thomas. Id. The Platoon Sergeant restrained F.B. and ordered Thomas to leave the area three times. Id. Thomas did not comply with these orders and F.B. broke loose from the Platoon Sergeant's grasp and attacked

Thomas. Id. at 5, 7. In the assault, Thomas sustained a fractured right clavicle and mouth and dental injuries. Id. at 5. In a memorandum dated August 17, 1993, the commander of Thomas's unit concluded that both parties were intoxicated and that Thomas disobeyed a direct order and provoked F.B. Id. at 6.

On February 27, 1996, Thomas applied for service-connection benefits relating to these injuries. The Montgomery, Alabama Regional Office of the Department of Veterans Affairs denied the claim, concluding that the injuries were the result of Thomas's willful misconduct. Id. at 2. Thomas subsequently appealed that decision, and in December 1998, the Board found that Thomas's claim was properly denied because Thomas's consumption of alcohol on August 13, 1993 constituted willful misconduct. Id. On January 24, 2000, the Board reconsidered its original opinion and rather than relying on Thomas's consumption of alcohol, it held that "[t]he evidence establishes that the cause of the veteran's injuries in 1993 was due to his disobedience of a lawful order" and denied Thomas's claim to establish service-connected disability. Id. at 3. Thereafter, Thomas appealed the Board's decision to the Veterans Court. On April 12, 2004, the Veterans Court issued an order affirming the Board's decision and entered judgment on August 10, 2004. On September 27, 2004, he appealed the Veterans Court's decision to this court.

This court has jurisdiction pursuant to 38 U.S.C. § 7292(c).

## II. DISCUSSION

### A. Standard of Review

This court reviews decisions by the Veterans Court deferentially. This court must affirm the Veterans Court decision unless it is "(A) arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." 38 U.S.C. § 7292(d)(1) (2000). Except for constitutional issues, we may not review any "challenge to a factual determination" or any "challenge to a law or regulation as applied to the facts of a particular case." Id. § 7292(d)(2).

## B. Presumption of Service Connection

On appeal, Thomas first argues that the Veterans Court improperly ignored the presumption of service connection created by 38 U.S.C § 105(a). Specifically, Thomas contends that "[t]he Board's decision did not address the statutory presumption of service connection in section 105(a)" or whether the evidence rebutted this presumption. Thomas also maintains that "[t]he Veterans Court did not address the Board's violation of this law." In response, the government submits that the Veterans Court properly recognized that the presumption "that an injury incurred during active military, naval, or air service was incurred in the line of duty unless the injury was a result of the person's own willful misconduct." See Id. § 105(a).[2]

---

[2]  In full, 38 U.S.C. § 105(a) provides:
An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active duty or on authorized leave, unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs. Venereal disease shall not be presumed to be due to willful misconduct if the person in service complies with the regulations of the appropriate service department requiring the person's to report and receive treatment for such disease.

Section 105 creates a presumption of service connection for injuries that occur during active duty unless evidence establishes that the injury was the result of the person's own misconduct. Shedden v. Principi, 381 F.3d 1163, 1166 (Fed. Cir. 2004); Forshey v. Principi, 284 F.3d 1335, 1352 (Fed. Cir. 2002) (en banc). The Veterans Court properly acknowledged this presumption in its decision. Indeed, it specifically referred to § 105 as creating the "presumption" that an injury incurred "in the line of duty unless the injury was a result of the person's own willful misconduct." Thomas I, slip op. at 3. Moreover, the Board's decision also recognized the presumption, citing § 105 and noting that "[a]n injury or disease having an onset in service will be presumed to have been incurred in the line of duty unless the preponderance of the evidence establishes that it was due to willful misconduct." Thomas II, slip op. at 4. Thus, we reject Thomas's argument to the contrary and conclude that the Board and the Veterans Court properly considered the statutory presumption under § 105(a), and then correctly proceeded to determine whether there was sufficient evidence to demonstrate that Thomas's actions on August 13, 1993 constituted willful misconduct that caused the injuries he sustained on that date.

## C. Evidentiary Standard

In rejecting Thomas's appeal, the Veterans Court concluded that the government rebutted the presumption under § 105(a) since it showed by a preponderance of evidence that Thomas's injuries were a result of willful misconduct. Thomas's principal argument on appeal is that the Veterans Court applied the incorrect evidentiary standard, namely the "preponderance of evidence" standard instead of the "clear and convincing" standard. Acknowledging that "sections 3.301(a) and (b) and 3.1(m) and

3.1(n) of the Secretary's regulations [implementing § 105] do not provide an evidentiary standard by which the defense of willful misconduct must be proven," Thomas argues that "no less than a showing of clear and convincing evidence" is necessary to rebut the presumption of service connection. Thomas maintains that "a preponderance of the evidence standard does not fairly distribute the risk of error between a veteran and the government" because "[t]he Secretary is more capable of bearing the burden of error if an undeserving claimant prevails." In support of this argument, he points to 38 U.S.C. § 1154(b), 38 U.S.C. § 1111, and 38 C.F.R. § 3.306(b) as all requiring "clear and convincing" evidence to rebut a presumption in favor of the claimant.

The government responds that the Veterans Court properly affirmed the Board's determination that the presumption of service connection was rebutted by a preponderance of the evidence showing that Thomas's actions on August 13, 1993 constituted willful misconduct and that his actions were the proximate cause of his injuries. The government acknowledges that § 105(a) does not specify the evidentiary standard necessary to rebut the presumption that a peacetime disability was incurred in line of duty, but argues that Congress established the general evidentiary standard for factual determinations of veterans' cases in 38 U.S.C. § 5107(b).[3] The government

---

[3] 38 U.S.C. § 5107, entitled "Claimant responsibility; benefit of the doubt" reads:

> (a) Claimant responsibility. Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary.
> (b) Benefit of the doubt. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

urges this court to apply § 5107, and the evidentiary standard applicable to § 5107, to § 105(a) in this case.

In support, the government points out that this court in Forshey examined 38 U.S.C. § 5107 for the purpose of determining the proper evidentiary standard under § 105(a), although Forshey declined to decide whether § 5107 set out a "preponderance of evidence" or "clear and convincing" standard. Forshey, 284 F.3d at 1351-52. The government therefore contends that 38 U.S.C. § 5107 establishes a general evidentiary standard governing determinations by the Board on issues material to the resolution of claims which is applicable to § 105(a) and the determination of willful misconduct for peacetime disabilities.

The government further relies on language in other opinions by this court as support that § 5107 sets out the "preponderance of evidence" standard. Although acknowledging that § 5107 does not explicitly state an evidentiary standard, the government points out that this court has found that § 5107(b), "the benefit of the doubt rule," does not apply "in cases in which the Board finds that a preponderance of the evidence is against the veteran's claim for benefits." Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001). Furthermore, the government points to language by this court quoting similar language by the Veterans Court. Forshey, 284 F.3d at 1340-41 (relying upon Gilbert v. Derwinski, 1 Vet. App. 49 (1990)).

We need not rely on the applicability of § 5107(b) alone, however, to reject Thomas's argument that "clear and convincing" rather than "preponderance of the evidence" is the proper evidentiary standard here. Indeed, we find as strong or stronger argument to be that Congress did not specifically set out that a heightened standard

was necessary to rebut the presumption of service connection in § 105(a) where the veteran's own willful misconduct or abuse of alcohol was involved.

"The 'preponderance of the evidence' formulation is the general burden assigned in civil cases for factual matters." St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 769 (Fed. Cir. 1993). The Supreme Court has explained that suits over money damages, as opposed to suits to deny liberty or life or individual interests, appropriately fall under the less stringent "fair preponderance of the evidence" standard. Santosky v. Kramer, 455 U.S. 745, 755 (1982); see also Gilbert, 1 Vet. App. at 53. Indeed, the normal standard in civil suits is the "preponderance" standard. The "clear and convincing" standard is "reserved to protect particularly important interests in a limited number of civil cases" where there is a clear liberty interest at stake, such as commitment for mental illness, deportation, or denaturalization. California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater, 454 U.S. 90, 93 (1981); Addington v. Texas, 441 U.S. 418, 424 (1979) (commitment for mental illness); Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 285 (1966) (deportation); Chaunt v. United States, 364 U.S. 350, 353 (1960) (denaturalization). The liberties at stake in those cases are easily and clearly distinguishable from this case, where the issue is whether an injury was incurred by a veteran in the line of duty.

It is true that Congress has established specific, heightened evidentiary standards for other determinations in veterans cases in 38 U.S.C. §§ 1111 and 1154(b). In those sections, Congress provided that certain decisions adverse to claimants must meet the heightened thresholds of either "clear and unmistakable evidence" or "clear and convincing evidence." Notably, however, Congress did not similarly do so for

determinations under § 105(a), supporting the assertion that Congress did not intend for a higher standard to apply here.  See Grogan v. Garner, 498 U.S. 279, 286 (1991) (finding that "silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof"); Russello v. United States, 464 U.S. 16, 23 (1983) (finding that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)); Cook v. Principi, 318 F.3d 1334, 1339 (Fed. Cir. 2002) ("Applying the familiar canon of expressio unius est exclusio alterius, we conclude that Congress did not intend to allow exceptions to the rule of finality in addition to the two that it expressly created.");[4] St. Paul Fire & Marine Ins. Co., 6 F.3d at 768-69 (Fed. Cir. 1993) ("Given that Congress explicitly imposed a high burden of persuasion on the importer when mounting a pre-importation challenge to a Customs ruling, and given that subsection (b) which contains the "clear and convincing" standard follows subsection (a) in the statute, we find no reason in the statute or its legislative history to import the clear and convincing standard from subsection 2639(b) to subsection 2639(a).").[5]

Accordingly, while Thomas argues that these other statutes support incorporating a "clear and convincing" standard into § 105(a), we find the opposite to be correct.

---

[4]  "Expressio unius est exclusio alterius means that 'the expression of one thing is the exclusion of another.'" Cook, 318 F.3d at 1339 n.6.

[5]  While we recognize that an ambiguity in a statute is resolved in favor of the veteran, Brown v. Gardner, 513 U.S. 115, 118 (1994), silence alone does not infer an ambiguity.  Russello v. United States, 464 U.S. 16, 23 (1983) (noting that it is presumed that Congress acts intentionally in an exclusion).

Sections 1111 and 1154(b) implicate distinguishable circumstances to justify a heightened evidentiary standard. Specifically, § 1111 relates to wartime disability compensation, creating a presumption of soundness only for veterans found "to have been in sound condition when examined, accepted, and enrolled for service" unless there is "clear and unmistakable evidence" that the injury existed before service and was not aggravated by wartime service. Similarly, § 1154 relates to injuries sustained by a "veteran who engaged in combat with the enemy in active service" unless service connection of such injuries are "rebutted by clear and convincing evidence." We therefore find that the absence of a heightened standard in § 105(a) supports a finding that Congress did not intend for such a standard to apply where the veteran's own willful misconduct or abuse of alcohol was involved. See Wagner v. Principi, 370 F.3d 1089, 1094-96 (Fed. Cir. 2004). Thus, we find that preponderance of the evidence is the proper evidentiary standard necessary to rebut a § 105(a) presumption and determine that a peacetime disability was the result of willful misconduct. Accordingly, the Veterans Court properly affirmed the Board's application of a preponderance of the evidence standard to rebut the § 105(a) presumption and the Board's determination that Thomas did not incur his injuries in the line of duty.

### D. 38 C.F.R. § 3.103(c)(2)

Finally, Thomas argues that the Veterans Court misinterpreted 38 C.F.R.

§ 3.103(c)(2).[6] In his view, 38 C.F.R. § 3.103(c)(2) required that the VA hearing officer ask him at the January 8, 1997 hearing about the amount of time he had to respond to the platoon sergeant's orders during the August 13, 1993 incident, which the hearing officer did not. Thomas argues that the officer needed to ask this question to determine whether his actions were willful. Thomas therefore contends that the Veterans Court erred by not remanding his claim to the Board to address this question. The government responds that the Veterans Court correctly found that the Board did not violate the requirements of § 3.103(c)(2) and thus properly affirmed the Board's decision, because the hearing officer was not required under § 3.103(c)(2) or any other regulation to ask the particular question concerning how much time Thomas had to obey the platoon sergeant's orders.

The Veterans Court found that Thomas failed to point to any language in 38 C.F.R. § 3.103(c)(2) or any other regulation as authority to support the proposition that

---

[6]     In full, 38 C.F.R. § 3.103(c)(2) provides:
The purpose of a hearing is to permit the claimant to introduce into the record, in person, any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent. All testimony will be under oath or affirmation. The claimant is entitled to produce witnesses, but the claimant and witnesses are expected to be present. The Veterans Benefits Administration will not normally schedule a hearing for the sole purpose of receiving argument from a representative. It is the responsibility of the VA employee or employees conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position. To assure clarity and completeness of the hearing record, questions which are directed to the claimant and to witnesses are to be framed to explore fully the basis for claimed entitlement rather than with an intent to refute evidence or to discredit testimony. In cases in which the nature, origin, or degree of disability is in issue, the claimant may request visual examination by a physician designated by VA and the physician's observations will be read into the record.

the hearing officer was required to question him on any particular theory in support of his case and we agree. The particular question that Thomas argues should have been asked by the hearing officer was not necessary "[t]o assure clarity and completeness of the hearing record" as required under 38 C.F.R. § 3.103(c)(2). Instead, we find the hearing officer fulfilled his duty in evaluating the record and that the evidence in the record adequately established the nature of Thomas's conduct. In view of the above, we find that substantial evidence supports the Veterans Court's decision.

## CONCLUSION

Accordingly, the decision of the Veterans Court's is affirmed.

## <u>AFFIRMED</u>