# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-4080

Walter A. Bryant, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued March 10, 2010)                                                                    Decided July 1, 2010)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Peter J. Meadows*, of Ft. Lauderdale, Florida, was on the brief for the appellant.

*Penny C. Kahn*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, LANCE, and DAVIS, *Judges*.

The opinion of the Court is per curiam.

LANCE, *Judge*, filed an opinion concurring in part and dissenting in part.

PER CURIAM: The appellant, Walter A. Bryant, through counsel, appeals an October 6, 2008, Board of Veterans' Appeals (Board) decision denying his claims for service connection for bilateral hearing loss, tinnitus, squamous cell carcinoma, and frostbite residuals of both feet. Record (R.) at 3-14. On December 9, 2009, the Court granted the appellant's motion for expedited consideration of this appeal. This Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the reasons discussed below, the Board's October 6, 2008, decision will be affirmed in part, and vacated in part and the matters remanded for further proceedings consistent with this decision.

# I. FACTUAL BACKGROUND

The appellant served in the U.S. Army from May 1943 to April 1946, and from September 1950 to October 1951. R. at 387, 394.

In February 2005, he filed a formal application for compensation benefits. R. at 357-68. During the development of his claim, the Secretary sent the appellant multiple letters explaining what evidence might be required to prove his claims. R. at 146, 250, 334-47. In June 2005, the Waco, Texas, regional office (RO) issued a rating decision denying the appellant's claims to entitlement for bilateral hearing loss, for tinnitus, for squamous cell carcinoma, and for frostbite residuals in both feet. R. at 243-49. As to the appellant's claims for bilateral hearing loss, for tinnitus, and for frostbite, the RO concluded that the record failed to show medical diagnoses for these conditions. R. at 246-47. As for the claim for service connection for squamous cell carcinoma, the RO explained the medical evidence showed "several areas of treatment" for this condition, but did not show this condition occurred in or was caused by service. R. at 244.

The appellant appealed this decision and a hearing was held before a Board member on August 28, 2008. R. at 21-33. In the October 6, 2008, decision on appeal, the Board, relying on VA medical opinions, issued a decision denying the appellant's claim for benefits for frostbite because the appellant did not currently have this disability, and denying his claim for benefits for hearing loss and tinnitus because these disabilities were not related to service. The Board also denied benefits for squamous cell carcinoma because there was no evidence the appellant had this disability, although there was no VA (or other) medical opinion to this effect. R. at 4.

The central question to be resolved in this case is the extent of the Board hearing officer's duty under 38 C.F.R. § 3.103(c)(2)(2009), *see also* 38 C.F.R. § 20.1304 (2009) (procedures to obtain a hearing at the Board), to explain fully the issues and suggest the submission of evidence that the claimant may have overlooked.[1]

---

[1] The hearing officer's duties are established in 38 C.F.R. § 3.103(c)(2) and a hearing may be requested during the initial adjudication of the claim or while the claim is on administrative appeal. *See also* 38 C.F.R. § 20.1304 (2009) (procedures for obtaining a hearing at the Board). Although the duties at either hearing are established by § 3.103(c)(2), this opinion generally addresses them in the context of a Board hearing.

*The Parties' Arguments*

The appellant's main argument is that the Board hearing officer failed to explain to him that additional medical evidence was needed to support his claims. He asserts that the hearing officer did not fulfill the responsibilities ascribed to him under 38 C.F.R. § 3.103(c)(2) (2009). The appellant argues that it was error for the Board hearing officer to fail to suggest that he submit medical evidence, to include diagnoses for his claimed disorders as well as the etiology of such conditions. At argument, appellant's counsel elaborated that he was arguing that the duty to fully discuss the issues and suggest the submission of overlooked evidence was "broad and totally encompassing" (Oral Argument at 11:35-43), so as to require the Board hearing officer to review the entire claims file prior to a hearing and make a preliminary decision so that the Board hearing officer can then explain at the hearing any deficiencies in the evidence that the appellant would need to overcome to receive a favorable decision (Oral Argument at 12:18-43).

The Secretary argues in his brief to the Court that the regulation applies to overlooked evidence, and "in light of the notification letters sent to Appellant . . . there simply was no *overlooked* evidence." Secretary's Brief (Br.) at 16 (emphasis in original). At oral argument, the Secretary detailed his argument, stating that "the Court has found that the hearing officer's section 3.103(c)(2) obligation arises in a narrow set of circumstances in which the hearing officer, having been placed on notice of the existence of evidence that would help prove a claim, failed to suggest the submission of such evidence." Oral Argument at 28:14-31.

The Secretary also argued that even if the hearing officer had a duty to inform the appellant that medical evidence was needed to substantiate his claim, failure to meet this duty resulted in no prejudice because the appellant had been so informed through the preadjudciatory notice he was provided pursuant to 38 U.S.C. § 5103(a).

## II. ANALYSIS

### A. Hearing Officer's Duties Under 38 C.F.R. § 3.103(c)(2) (2009)

As the Court has observed, "a functioning system of laws must give primacy to the plain language of authorities." *Tropf v. Nicholson*, 20 Vet.App. 317, 322 n.1 (2006). The language of the regulation is the necessary starting point because "[w]ithout standard word meanings and rules of

3

construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or—more importantly—veteran can rely on a statute or regulation to mean what it appears to say." *Id.*; *see also Hickson v. Shinseki*, 23 Vet.App. 394, 401 (2010) (concluding that Secretary's interpretation of the regulation at issue was in conflict with the plain language used).

Section 3.103(c)(2) imposes, inter alia, two distinct duties on the hearing officer at issue in this case: The duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. The regulation at issue reads:

> The purpose of a hearing is to permit the claimant to introduce into the record, in person, any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent. All testimony will be under oath or affirmation. The claimant is entitled to produce witnesses, but the claimant and witnesses are expected to be present. The Veterans Benefits Administration will not normally schedule a hearing for the sole purpose of receiving argument from a representative. It is the responsibility of the employee or employees conducting the hearings *to explain fully the issues* and *suggest the submission of evidence which the claimant may have overlooked* and which would be of advantage to the claimant's position. To assure clarity and completeness of the hearing record, questions which are directed to the claimant and to witnesses are to be framed to explore fully the basis for claimed entitlement rather than with an intent to refute evidence or to discredit testimony. In cases in which the nature, origin, or degree of disability is in issue, the claimant may request visual examination by a physician designated by VA and the physician's observations will be read into the record.

38 C.F.R. § 3.103(c)(2) (emphasis added).

Although the hearing officer's duties to "explain fully the issues and suggest the submission of evidence which the claimant may have overlooked" are not further detailed in the regulation,[2] the appellant's argument that these duties necessarily involve the preadjudication of his claim is not supported by the language of the regulation, or its prior interpretation and application. Similarly, the Secretary's view that his duties are limited to suggesting the submission of only that evidence that

---

[2] Although 38 U.S.C. § 7107(d) provides the right to a hearing, it does not prescribe the duties imposed on the hearing officer discussed herein, which are imposed solely by regulation. No argument has been made that the duties imposed by the Secretary exceed his authority or are otherwise inconsistent with statute, and we perceive no such conflict. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) ("[The Secretary] is free to write the regulations as broadly as he wishes, subject only to the limits imposed by the statute.").

is already in existence, and only when the possible existence of such evidence is triggered at the hearing, has no basis in the plain language of the regulation, or its prior interpretation and application.

*1. Plain Language*

a. Appellant's Call for Preadjudication

Nothing in § 3.103(c)(2) supports the appellant's contention that the regulation requires a hearing officer to preadjudicate or otherwise weigh conflicting evidence prior to or at the hearing. *See Tropf, supra*. Moreover, such preadjudication is not required to explain to the claimant that – for a disability compensation claim – the issues are status as a veteran, injury or disease in service, current disability, and nexus between the current disability and the injury or disease in service. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) *aff'd per curiam*, 78 F.3d 604 (Fed. Cir.1996) (table) (proving service connection requires (1) medical evidence of a current disability, (2) medical evidence or, in certain circumstances, lay testimony of in-service incurrence or aggravation of an injury or disease, and (3) medical evidence of a nexus between the current disability and the in-service disease or injury).

Preadjudication or the weighing of conflicting evidence also is not required for a hearing officer to determine that evidence is not in the record with regard to a particular, material element of a claim. And, preadjudication or weighing evidence is not required in order to advise a claimant of the need to submit evidence on a material issue for which there is no evidence in the record. Moreover, the evidence does not have to be weighed or the claim adjudicated "to assure clarity and completeness of the hearing record," which is one of the implicit duties imposed by § 3.103(c)(2). *See Thomas v. Nicholson,* 423 F.3d 1279 (Fed. Cir. 2005) (discussed further, *infra* at 9); *see also* 38 U.S.C. §.7107(a) and (f)(1)-(2) (permitting "the screening of cases for purposes of determining the adequacy of the record for decisional purposes; or the development, or attempted development, of a record found to be inadequate for decisional purposes" even when a claim is not up for consideration in the regular docket order). Accordingly, we find no basis for writing into the Secretary's regulation a requirement that a hearing officer weigh the evidence in the record or otherwise preadjudicate the claim prior to or at the hearing. *See Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150 (1991) ("it is well established that an agency's

interpretation of its own regulation is entitled to substantial deference").

      b.  <u>Secretary's Limited View of Duty To Suggest the Submission of Evidence</u>

Similarly, nothing in the regulation limits the Secretary's duties to advise the claimant to submit evidence *only* to those situations when the existence of such evidence is raised at the hearing. Given the duty to fully explain the issues, there is no dispute that a hearing officer necessarily must review the record. Having done so, however, he cannot ignore a lack of evidence in the record on a material issue and not suggest its submission, unless the record (or the claimant at hearing) clearly shows that such evidence is not available. To do so would ignore the regulatory mandate to advise the claimant to submit evidence that might have been overlooked. *See Martin* at 150-51 ("In situations in which the meaning of [regulatory] language is not free from doubt, the reviewing court should give effect to the agency's interpretation so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations" (internal quotations and citations omitted)). Moreover, applicable caselaw shows that such inaction is not permissible.

### 2. Applicable Caselaw

In considering the issue at hand, we look to several decisions of the Court and to a decision of the U.S. Court of Appeals for the Federal Circuit. In *Douglas v. Derwinski,* 2 Vet.App. 103, 105 (1992), the appellant applied for service connection for skin cancer and testified extensively about treatment he received to remove growths from his skin. Nonetheless, the record did "not contain any medical records pertinent to these assertions." *Id.* The Court denied the Secretary's motion for summary affirmance of the Board decision and concluded that the veteran's testimony raised the issue of direct service connection for his cancer and that the Board member should have suggested the submission of evidence "necessary to establish that claim." *Id.* at 110. The Secretary filed a motion for reconsideration arguing that the Court's panel decision was incorrect because the regulation did not apply to the Board. *Douglas v. Derwinski,* 2 Vet.App. 435, 437 (1992) (en banc). The Court rejected the Secretary's argument and stated that the Board "was obliged to have fully explained to the veteran that his exposure to the sun during service, his later development of basal-cell carcinoma, and his physician's statement about his sun-damaged skin raised the issue of direct service connection for his illness," as well as obligated "to have suggested to him the submission of additional evidence he may have overlooked that would have helped his case." *Id.*

at 442.

In *Proscelle v. Derwinski,* 2 Vet.App. 629 (1992), the appellant applied for an increased rating for his maxillary condition. *Id.* at 631. During the course of his hearing, the appellant asserted that his disability had gotten worse since his last examination. The Court held that the hearing officer should have suggested the submission of "medical evidence of the then-current level of his service-connected disability." *Id.* at 633. The Court also determined that the Board's statement of reasons or bases was inadequate because it failed to address the appellant's assertions during his hearing that his maxillary condition had caused his "nervous condition," and, further, determined that the Board member should have suggested at the hearing that the appellant "submit medical evidence supporting his claim." *Id.*

In *Cuevas v. Principi,* 3 Vet.App. 542 (1992), a veteran whose service medical records had been destroyed by fire testified at a hearing in 1990 that he had undergone a hearing test in 1985 or 1986 that confirmed his hearing loss. Noting that § 3.103(c)(2) requires the Secretary to fully explain the issues and suggest the submission of overlooked evidence, the Court held that

> VA's statutory duty to assist includes, in cases such as this, having the Hearing Officer tell the veteran that, at a minimum, he should submit a doctor's report or statement confirming the existence of current hearing loss, especially since the veteran had testified that a hearing test in 1985 or 1986 had confirmed a hearing loss.

*Id.* at 548.

Although VA had sent Mr. Cuevas a notice letter informing him of the need to submit such evidence, the Court held that the hearing officer was nonetheless required to reiterate this concept.

In *Costantino v. West,* 12 Vet.App. 517 (1999), a veteran's widow sought to obtain disability and indemnity compensation. The widow argued that the veteran's service-connected mental condition caused him to refuse medication for illnesses, and that this refusal resulted in his death. At a hearing, the widow's representative contended that the veteran's service-connected mental condition hastened his death. The Board noted that the record did not contain clinical documentation of the veteran's final hospitalization or a medical opinion demonstrating a nexus to service. The Court stated:

> [The Board erred] in failing to find error in the hearing officer's failure to suggest to the appellant that she submit medical evidence regarding any relationship between the veteran's service-connected condition and his refusal of treatment and any

7

relationship between such refusal and his death, as well as any additional records concerning the veteran's death.

*Id.* at 520.

In *Sizemore v. Principi,* 18 Vet.App. 264 (2004), a veteran seeking service connection for post-traumatic stress disorder described at a hearing his experiences in Vietnam. *Id*. at 274. The Court stated that the

> appellant was not advised adequately by VA as to the types of information that may help to verify his claimed in-service stressors. In particular, at the May 1996 hearing, VA failed to advise the appellant that he could submit corroboration in the form of "buddy statements" as to some of the occurrences that he alleged were in-service stressors.

*Id.* Although the potential evidence was not yet in existence or obtained in *Sizemore*, the claimant's testimony suggested that it might be obtained to corroborate the incident described.

In *Prickett v. Nicholson,* 20 Vet.App. 370 (2006), a widow of a veteran sought service connection for the cause of her husband's death. The widow sought to establish that the cause of his death – heart disease – was due to his service-connected psychosis. At the hearing, the decision review officer "repeatedly informed Mrs. Prickett that medical evidence, in particular, a medical opinion demonstrating a nexus between the veteran's service and the cause of death, was critical to the disposition of her claim and asked her to submit such evidence." *Id.* at 373. Mrs. Prickett stated that there was no medical evidence to submit at that time. The Court found that the hearing officer did not violate his duties under § 3.103(c)(2) to fully explain the issues and suggest the submission of overlooked evidence because he informed the widow that (1) the most probative information with regard to determining her claim was "statements from medical types"; (2) she needed to have medical evidence related to nexus; and (3) she should submit any evidence she possessed, particularly medical evidence in support of her claim. *Id.* at 382.

In addition to the Court's caselaw, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) also has issued an opinion addressing 38 C.F.R. § 3.103(c)(2). In *Thomas v. Nicholson,* 423 F.3d 1279 (Fed. Cir. 2005), the veteran was injured after he failed to respond to three orders from a sergeant who instructed him to leave a barracks. The veteran filed a claim for service connection for the injuries and testified at a hearing regarding the claim. His claim was denied, as the Board determined that his injuries were due to alcohol consumption. The Board reconsidered

8

and found his injuries were due to his disobedience of a lawful order. The veteran argued that the hearing officer was required to ask him about the amount of time he had to respond to the sergeant's orders, which could have shown that his actions were not willful. The Federal Circuit agreed with this Court that Mr. Thomas failed to demonstrate that the hearing officer was required to question the appellant on any particular theory in support of his claim. Specifically, the Federal Circuit held that the question was not necessary because it was not needed "to assure clarity and completeness of the hearing record" as required under § 3.103(c)(2). "Instead, we find the hearing officer fulfilled his duty in evaluating the record and that the evidence in the record adequately established the nature of Thomas's conduct." *Id.* at 1285.

3. *Scope of Duties To Explain Issues Fully and Suggest Submission of Overlooked Evidence*

As previously stated, the relevant caselaw provides no support for finding a duty that the hearing officer preadjudicate the claim or that the hearing officer's duty to explain the issues and suggest the submission of evidence is as limited as the Secretary suggests. Rather, the caselaw amply supports a finding that the hearing officer has a duty to fully explain the issues still outstanding that are relevant and material to substantiating the claim.[3] *See, e.g., Prickett*, *Cuevas*, and *Proscelle*, all *supra.* Thus, when an element of the claim is not an issue in an appellant's case, there is no need for the hearing officer to discuss it. For example, when veteran status or current disability is established, there is no reason for a hearing officer to discuss those issues. On the other hand, when the RO has denied a disability claim because there is no current disability, no nexus to service, or no incident in service, etc., then the Board hearing officer should explain that the claim can be substantiated only when the claimed disability is shown to exist and shown to be caused by an injury or disease in service, and the Board hearing officer's explanation and discussion should be centered on these issues.

The caselaw also amply supports a finding that the hearing officer must suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record. *See, e.g., Procelle*, *Cuevas*, and *Sizemore*, all *supra.* Because there is no

---

[3] The RO's rating decision and Statement of the Case, which a hearing officer should have encountered in his review of the record, will likely assist the hearing officer in identifying the outstanding issues.

9

requirement to preadjudicate an issue or weigh the evidence, the hearing officer's review of the record in preparation for the hearing is one that should focus on the issues that remain outstanding, and whether evidence has been gathered as to those issues. If a claim has been denied for lack of evidence of a current disability, and no medical examination has been provided by the Secretary or medical evidence submitted by the appellant, then this lack of evidence gives rise to the duty of the Board hearing officer to suggest submission of this evidence. The hearing officer therefore must not only be familiar with the claims file but also be engaged in the hearing process. The hearing officer also must suggest the submission of evidence when testimony during the hearing indicates that it exists (or could be reduced to writing) but is not of record. Moreover, VA's issuance of a notice letter that complies with 38 U.S.C. § 5103(a) has no bearing on the duty to suggest the submission of evidence that may have been overlooked. *See Cuevas, supra; see also* Section C, *infra*.

To the extent the above scope of the duties to fully explain the issues and suggest the submission of evidence may not have been stated or held explicitly in prior cases, we so state and hold today.

### B. Application of Law to the Present Case

#### 1. Duty To Fully Explain the Issues

In this case, the Board member began the hearing by stating: "The issues I have for appeal today are four. They are (1) entitlement to service connection for bilateral hearing loss, (2) entitlement to service connection for tinnitus, (3) entitlement to service connection for squamous cell carcinoma, and (4) entitlement to service connection for frostbite of both feet." R. at 22. Although this statement explained the issues in terms of the scope of the claim for benefits, it did not "explain fully" the outstanding issues material to substantiating the claim, which in this instance were current disability and medical nexus. Even though the hearing officer made inquiries during the hearing regarding whether any doctor had ever related the appellant's claimed disabilities to service and the basis for asserting a disability (R. at 25-31), at no point did the Board member explain that these issues were material to substantiating the claim – i.e., that they were the reasons the appellant's claims were denied by the RO. Accordingly, the Board member erred as to the first duty – to fully explain the issues – under § 3.103(c)(2).

10

## 2. Duty To Suggest the Submission of Evidence Possibly Overlooked

As to the duty to suggest evidence that may have been overlooked, responses were elicited from the appellant as to frostbite, hearing loss, and tinnitus, as well as his basis for believing these claimed disabilities were related to service. At the time of the hearing, the record already contained VA medical examination reports stating that the appellant currently did not have frostbite, and that, although he had hearing loss and tinnitus, these disabilities were not caused by his service. Moreover, the hearing discussion did not reveal any evidence that might be available that had not been submitted. Under these circumstances, nothing gave rise to the possibility that evidence had been overlooked with regard to the appellant's claim for benefits for frostbite, hearing loss, and tinnitus.

With regard to squamous cell carcinoma, the appellant's representative at the hearing elicited information from the appellant about this claimed disability, and the appellant did not reveal any unsubmitted evidence that might be available. In contrast to the above circumstances, however, at the time of the hearing, there was no VA or other examination report addressing nexus, although the record on appeal contained VA treatment records for skin cancer and Bowen's Disease, a type of squamous cell carcinoma.[3] Under these circumstances, the lack of medical evidence in the record addressing a nexus between the appellant's diagnosed squamous cell carcinoma and an in-service event or injury gave rise to the possibility that evidence had been overlooked, and the Board hearing officer should have suggested that the appellant secure and submit this evidence if he could; the hearing officer's failure to do so was error.[4] *See Sizemore*, *Costantino*, and *Cuevas*, all *supra*.

---

[4] The Board stated that there was no evidence of a current diagnosis for squamous cell carcinoma. R. at 12. However, a careful review of the appellant's VA medical records indicates that on October 16, 2003, the appellant underwent a biopsy of an "8mm erythematous papule mid upper back/neck area." R. at 302-03. A November 25, 2003, medical record states: "[P]athology came back as [B]owen's with incomplete margins." R. at 296; *see also* R. at 287. Bowen's Disease is a type of squamous cell carcinoma. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 536 (31st ed. 2007).

[5] Our dissenting colleague's view that reviewing the record to identify the issues on appeal and assess whether evidence may have been overlooked equates to an evaluation of the evidence, *post* at 1, fails to recognize that the issues on appeal are readily identifiable in the RO's decision and the statement of the case, and further fails to recognize that neither the identification of the issues nor the observation that there is no evidence on one of those issues (thus indicating that its submission may have been overlooked) requires any weighing or evaluation of the evidence.

## C. Prejudice

The Court must next consider whether the appellant was prejudiced by the Board's errors. *See* 38 U.S.C. § 7261(b)(2); *Shinseki v. Sanders,* 129 S. Ct. 1696, 1704 (2009). In his brief, the Secretary argues that the notice letters provided to the appellant under section 5103(a) eliminate any potential prejudice that might have been caused by the Board member's failure to explain the issues because they sufficiently explained the need for the appellant to submit medical evidence. Secretary's Br. at 13-14. However, section 5103(a) serves a different purpose in the statutory scheme than § 3.103(c)(2). *See Wilson, supra.* Further, the Court already has held that a hearing officer has the duty to suggest the submission of evidence even when the claimant has been provided a letter notifying him of the need to submit such evidence. *See Cuevas, supra.* Not only is this precedential opinion binding, *see Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (panel decisions constitute "binding precedent" unless overturned by en banc opinion of this Court or decision of the Federal Circuit or U.S. Supreme Court), to hold that the failure of a hearing officer to suggest the submission of evidence that might have been overlooked is rendered nonprejudicial simply because the claimant had been provided preadjudicatory notice of what was needed to substantiate the claim essentially would eviscerate the duty imposed by the Secretary in § 3.103(c)(2). There is no basis for rendering such a holding. Rather, the assessment of prejudice generally is case specific, demonstrated by the appellant and based on the record. *See Shinseki*, *supra* (appellant generally bears burden of demonstrating prejudicial error on appeal); *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (remand unnecessary "[i]n the absence of demonstrated prejudice"); *see also Mlechick v. Mansfield*, 503 F.3d 1340, 1346 (Fed. Cir. 2007) (Court must review the record to take due account of the rule of prejudicial error).

### 1. Frostbite, Hearing Loss, and Tinnitus

With regard to the appellant's claim for benefits for frostbite, hearing loss, and tinnitus, although the Board hearing officer did not explicitly lay out the material issues of medical nexus and current disability, the record reflects that they were developed by the Secretary – to include medical examination reports on each of these disabilities and any nexus to service – and there was no indication that the represented appellant had any additional information to submit. Accordingly, the "clarity and completeness of the hearing record" was intact with respect to these disabilities and the

12

purpose of § 3.103(c)(2) was fulfilled. *See Thomas* and *Marcinak*, both *supra*; *see also Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed. Cir. 1996) (service connection generally requires, inter alia, medical nexus).

Our dissenting colleague's reliance on *Moore v. Shinseki*, 555 F.3d 1369, 1374-75 (Fed. Cir. 2009) for finding prejudice is misplaced. *Moore* confirmed and clarified the statutory duty of the Secretary to secure potentially relevant evidence when reasonably identified by a claimant, *see* 38 U.S.C. § 5103A, and is inapposite to the regulatory duties imposed on a hearing officer under § 3.103(c)(2); there is no suggestion that Mr. Bryant identified relevant evidence that was not obtained by the Secretary. Our colleague's focus on the fact that a purpose of the hearing is to permit a claimant to submit evidence also is misplaced; there is no suggestion that Mr. Bryant was denied an opportunity to submit evidence. Rather, the prejudice identified by our dissenting colleague arises from a duty not imposed by regulation or statute; i.e., a duty to weigh conflicting evidence or otherwise preadjudicate the claim and advise the claimant of those areas where the evidence weighs against his claim. Congress or the Secretary might create such a duty, but as noted in our discussion above, they have not yet done so. *Cf. Locklear, supra*.

### 2. Squamous Cell Carcinoma

In contrast to the above, the failure to explicitly lay out the material issues with regard to squamous cell carcinoma was combined with a failure to suggest to the appellant that he should secure and submit medical evidence on the key issue of nexus to service – evidence that was lacking at the time of the hearing, and that remained lacking through final Board decision. Had the appellant been notified that evidence may have been overlooked on this issue, he could have requested such an examination from the Secretary or secured one on his own. Although it is not known whether the appellant can secure a favorable medical report, his prejudice arises from the failure of the hearing officer to assure the "clarity and completeness of the hearing record," *Thomas*, 423 F.3d at 1285, and the lost additional opportunity to try and submit such evidence before his claim finally was adjudicated, which is one of the prima facie purposes of the regulatory requirement that the Board hearing officer suggest the submission of material evidence that the appellant may have overlooked. 38 C.F.R. § 3.103(c)(2); *see also Parker v. Brown*, 9 Vet.App. 476, 481 (1996) (stating that "'[p]rejudice ... means injury to an interest that the statute, regulation, or rule in question was

13

designed to protect'" (quoting *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996))); *cf. Shinseki*, 129 S. Ct. at 1708 (indicating as a factor for determining notice-error prejudice, the identification of evidence that might have been obtained or sought if proper notification had been given); *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) (holding that "[w]here the effect of an error on the outcome of a proceeding is unquantifiable . . . , we will not speculate as to what the outcome might have been had the error not occurred").

### III. CONCLUSION

On consideration of the foregoing, that part of the Board's October 6, 2008, decision denying benefits for frostbite, hearing loss, and tinnitus is AFFIRMED, and that part denying benefits for squamous cell carcinoma is VACATED and the matter REMANDED for further adjudication consistent with this opinion.

The opinion of the Court is per curiam. LANCE, Judge, filed an opinion concurring in part and dissenting in part.

LANCE, *Judge*, concurring in part and dissenting in part:  I believe that the majority does an excellent job in many respects in clarifying our previously disjointed caselaw on 38 C.F.R. § 3.103(c)(2) (2009).  However, I think the opinion suffers from two serious problems.

First, I believe that the majority fails to sufficiently explain the distinction between its holding that the regulation does not require a preadjuication of the claim or weighing of the evidence and its requirement that the hearing officer must review the entire record to fully explain the issues on appeal.  Reviewing the record to determine what issues it raises necessarily requires some evaluation of the evidence and some judgment about which issues are reasonably in dispute. Determining that there is no favorable evidence in the record will often require making a decision about the nature or meaning of ambiguous documents or reports in the claims file.  Hence, it is not clear to me how these two conclusions coexist.  More importantly, it is not clear how the Court should review such issues in future cases except to entertain arguments from counsel that amount to allegations that the Board should have preadjudicated the claim or weighed the evidence to

14

provide a full explanation of the issues.

In my view, a better standard would be one that is similar to the one used in *Kent v. Nicholson*, 20 Vet.App. 1 (2006), to avoid requiring the preadjudication of claims. In *Kent*, the Court concluded that proper 38 U.S.C. § 5103(a) notice as to an attempt to reopen a previously denied claim requires the Secretary to look at the basis of the prior denial and tailor the notice to any findings of fact that would affect the type of evidence that the claimant must submit. 20 Vet.App. at 10. By analogy, 38 C.F.R. § 3.103(c)(2) should require the Board to look at the most recent RO decision—which may be the most recent Supplemental Statement of the Case considering additional evidence—and clearly explain to the appellant what element or elements of the claim were found deficient by that decision and what types of evidence would help the appellant prevail as to those issues. If the RO addressed multiple theories as to a claim, the Board would have to explain the issues related to each theory.

I believe that such a standard would be vastly easier for the Board to apply and for the Court to review. While there are certainly cases where the Board may ultimately spot an issue that was completely overlooked by the RO, the Court has recently held that the Secretary's regulations prevent the Board from considering new legal theories in the first instance. *Hickson v. Shinseki*, 23 Vet.App. 394, 400-03 (2010). Thus, even if the Board later determines that the RO decision overlooked an issue, the claimant must receive notice of the issue and the opportunity to have it remanded to the RO. *Id.* Accordingly, even if a bright-line, *Kent*-style rule does not perfectly capture every issue, claimants are still protected from being blindsided by a Board decision that raises a new issue.

My second—and more serious—concern is that the majority's prejudicial error analysis effectively guts the requirement to fully explain the issues in many cases. In this case, the opinion concludes that the 38 C.F.R. § 3.103(c)(2) error was harmless because the negative medical evidence of record proves that the appellant was not prejudiced. To do so, the opinion mistakenly frames the prejudicial error question as whether the error affected "the 'clarity and completeness of the hearing record.'" Ante at 12 (quoting 38 C.F.R. § 3.103(c)(2)). However, I believe that is the standard that should be used for the second prong of the regulation: the duty to suggest the submission of overlooked evidence. As to the first prong, the duty to fully explain the issues, the first sentence of 38 C.F.R. § 3.103(c)(2) explicitly states that the purpose of a hearing is to provide the claimant with

15

an *opportunity* to submit favorable evidence. The duty to fully explain the issues exists to make that opportunity meaningful by ensuring that the appellant understands what issues most likely require the submission of favorable evidence before there is a reasonable possibility of prevailing on the claim. Where there is substantial negative evidence in the record on an issue, it is even more important that the Board member explain the need for favorable evidence in order for the claimant to have a realistic opportunity to prevail on the claim. *See Moore v. Shinseki*, 555 F.3d 1369, 1374-75 (Fed. Cir. 2009) (concluding that failure to obtain potentially favorable, circumstantial evidence was prejudicial even though the record contained copious direct evidence against the claim).

In this regard, the majority opinion expresses confusion about my positions and presents a flawed rebuttal by unnecessarily mixing my two concerns together. First, I do not believe that I can be any clearer that preadjudication of claims by the Board is not required. Instead, I believe that the scope of the duty to fully inform should be defined by the findings of the actual adjudication done at the RO level prior to the Board hearing. Second, the opportunity to submit evidence is more than just a window of time in which new evidence will be received. When the issue in dispute requires expert evidence because it is beyond the common knowledge of lay persons, there is little reason to believe that such favorable evidence will actually be submitted unless the appellant understands the types of evidence needed to have a chance of prevailing. Indeed, my essential point is that the majority fails to acknowledge the possibility that the reason Mr. Bryant never identified any additional medical evidence in support of his claim was because he did not understand that he needed to do so. The fact that he did not submit such evidence earlier tends to suggest that is the case. In my view, there does not appear to be any explanation for creating the duty "to explain fully the issues" except to neutralize the inference that the failure to submit evidence was the product of ignorance. Under the totality of the circumstances in this case, it appears that Mr. Bryant's failure to submit favorable medical evidence may be the product of ignorance and, therefore, he was potentially prejudiced by the violation of the duty directly targeted at avoiding such a situation.

I suppose there is some threshold where the negative evidence of record is so overwhelming or incontrovertible that denying a claimant the opportunity to rebut it would be harmless. However, in summary, I believe that the regulation exists to help claimants rebut negative evidence and, therefore, the existence of some negative evidence reinforces, rather than cures, the prejudice of not

explaining the issue. Accordingly, I would remand all of the appellant's claims based upon the Court's conclusion that the Board erred so that the appellant would have a meaningful opportunity to present rebuttal evidence on the key issues in his claims.