Citation Nr: 1542433 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 09-36 741 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Sioux Falls, South Dakota


THE ISSUE

Entitlement to recognition as the surviving spouse of the deceased Veteran for the purpose of entitlement to disability and indemnity compensation (DIC) benefits.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

J. Rutkin, Counsel


INTRODUCTION

The Veteran served on active duty from June 1966 to August 1969. He died in January 2001. The appellant seeks recognition as the Veteran's surviving spouse. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. This case is currently under the jurisdiction of the RO in Sioux Falls, South Dakota. 

The Veteran testified at a hearing before the undersigned in June 2015. A transcript is of record. 


FINDING OF FACT

The appellant and the Veteran divorced in January 1993, and there is no evidence or argument that they reentered marriage thereafter, including under common law. 


CONCLUSION OF LAW

The criteria for recognition of the appellant as a surviving spouse for the purpose of receiving DIC benefits are not satisfied. 38 U.S.C.A. §§ 101(3), 103 (West 2014); 38 C.F.R. §§ 3.1(j), 3.5, 3.50 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Procedural Due Process

Under the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in establishing a claim for VA benefits. See 38 U.S.C.A §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2015). The appellant was provided general notice of what is required to establish entitlement to DIC benefits in a November 2007 letter, including surviving spouse status, as well as VA's and the appellant's respective responsibilities for obtain evidence on her behalf. Further notice or assistance is not warranted, as the claim must be denied as a matter of law, and there is no reasonable possibility that further assistance would establish surviving spouse status for VA benefits purposes. See Mason v. Principi, 16 Vet. App. 129, 132 (2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); 38 C.F.R. § 3.159(d). In this regard, the undisputed evidence shows that the appellant was not the Veteran's surviving spouse at the time of his death, and thus does not satisfy the basic eligibility requirements for DIC benefits. Thus, as the outcome of the issue on appeal turns solely on the application of law to facts that are not in dispute, and as there is no reasonable possibility that further development would alter those facts, VA's duties to notify and assist are moot. See Mason, 16 Vet. App. at 132; 38 C.F.R. § 3.159(d). 

The appellant testified at a hearing before the undersigned in June 2015. Under 38 C.F.R. § 3.103(c)(2) (2015), the hearing officer has the responsibility to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that the hearing officer has two duties under § 3.103(c)(2). First, the hearing officer must explain fully the issues still outstanding that are relevant and material to substantiating the claim by explicitly identifying them for the claimant. Id. at 496. Second, the hearing officer must suggest that a claimant submit evidence on an issue material to substantiating the claim when such evidence is missing from the record or when the testimony at the hearing raises an issue for which there is no evidence in the record. Id. at 496-97.

At the hearing, the appellant had an opportunity to provide testimony in support of this claim, facilitated by questioning from the undersigned and her representative. As the claim must be denied as a matter of law based on facts that are not in dispute, and as there is no reasonable possibility that further development would affect the outcome of this claim, any deficiencies in discharging the hearing officer's duties under § 3.103(c)(2) were harmless error. See Bryant, 23 Vet. App. at 498 (holding that the rule of prejudicial error applies to the hearing officer's duties); see also Shinseki v. Sanders, 556 U.S. 396, 407, 410 (2009).


II. Analysis

Under VA law, a surviving spouse of a veteran may qualify for DIC, death compensation, death pension, and/or accrued benefits, collectively known as death benefits, provided that certain marriage date requirements are satisfied. See 38 U.S.C.A. §§ 101(14), 1102(a)(2) 1310, 1311, 1541 (West 2014); 38 C.F.R. §§ 3.4, 3.5, 3.54, 3.1000 (2015). For DIC benefits, the surviving spouse must have been married to the veteran before the expiration of 15 years after the termination of the period of service in which the injury or disease causing the death of the veteran was incurred or aggravated; or for one year or more; or for any period of time if a child was born of the marriage, or was born to them before the marriage. 38 U.S.C.A. § 1102, 1304; 38 C.F.R. § 3.54 (2015). 

A "surviving spouse" is defined as a person who was the spouse of a veteran at the time of the veteran's death, and who lived with the veteran continuously from the date of marriage to the date of the veteran's death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried or (in cases not involving remarriage) has not since the death of the veteran lived with another person and held himself or herself out openly to the public to be the spouse of such other person. 38 U.S.C.A. § 101(3); 38 C.F.R. § 3.50(b).

To qualify as a surviving spouse, the claimant's marriage to the veteran must meet the requirements of either 38 C.F.R. § 3.1(j) or 38 C.F.R. § 3.52. 38 C.F.R. § 3.50(b). Under 38 C.F.R. § 3.1(j), a marriage is defined as "a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued." 38 C.F.R. § 3.1(j); see 38 U.S.C. § 103(c).

Under 38 C.F.R. § 3.52, where an attempted marriage of a claimant to the veteran was invalid by reason of a legal impediment, the marriage will nevertheless be deemed valid if: (a) The marriage occurred 1 year or more before the veteran died or existed for any period of time if a child was born of the purported marriage or was born to them before such marriage (see § 3.54(d)), and (b) the claimant entered into the marriage without knowledge of the impediment, and (c) the claimant cohabitated with the veteran continuously from the date of marriage to the date of his or her death as outlined in § 3.53, and (d) no claim has been filed by a legal surviving spouse who has been found entitled to gratuitous death benefits other than accrued monthly benefits covering a period prior to the veteran's death. See 38 U.S.C.A. § 103(a). 

Where proof of marriage in accordance with 38 C.F.R. § 3.205(a) (2015) has been submitted, and the claimant meets the requirements of § 3.52, a claimant's signed statement that he or she had no knowledge of an impediment to marriage to the veteran will be accepted, in the absence of information to the contrary, as proof of that fact. 38 C.F.R. § 3.205(c).

A divorce decree is of record showing that the marriage of the Veteran and the appellant was terminated in January 1993. 

There is no evidence suggesting, nor does the appellant contend, that she and the Veteran remarried, including by way of a common law marriage, after the January 1993 divorce. In this regard, in determining whether a marriage is valid, the law of the place where the parties resided will be applied. 38 C.F.R. § 3.1(j). Although the legal requirements vary from jurisdiction to jurisdiction, typically all of the following elements must be present in order to establish a common law marriage: (1) An agreement between the parties to be married (this can be explicit or inferred from the conduct of the parties; (2) cohabitation (the parties actually lived together for some period of time); (3) holding out to the public as married (the parties represented themselves to the community as husband and wife). Adjudication Procedure Manual, M21-1MR, Part II, Subpart iii, 5.C.12.d. 

In cases involving alleged common-law marriages, there must be proof of a common law marriage for the purpose of receiving VA benefits. Supporting evidence of common law marriage should include affidavits or certified statements of one or both of the parties of the marriage, if living, setting forth all of the facts and circumstances concerning the alleged marriage, such as the agreement between the parties at the beginning of their cohabitation, the period of cohabitation, places and dates of residences, and whether children were born as the result of the relationship. This evidence should be supplemented by affidavits or certified statements from two or more persons who know as the result of personal observation the reputed relationship which existed between the parties to the alleged marriage, including the periods of cohabitation, places of residences, whether the parties held themselves out as husband and wife, and whether they were generally accepted as such in the communities in which they lived. 38 C.F.R. § 3.205(a)(6). 

The appellant and the Veteran were both residing in Pennsylvania at the time of his death. Hence, the law of Pennsylvania applies. See 38 C.F.R. § 3.1(j). Pennsylvania abolished common law marriage effective January 2, 2005. Section 1103 of the Pennsylvania Domestic Relations Code states that "[n]o common-law marriage contracted after January 1, 2005, shall be valid." 23 PA. STAT. ANN. § 1103. However, Pennsylvania's abolishment of common law marriage was only prospective, and did not apply to common law marriages in existence prior to January 2, 2005. Specifically, § 1103 provides that "[n]othing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005 invalid." Because the timeframe at issue precedes Pennsylvania's abolishment of common law marriages, a legal common law marriage would still be possible in Pennsylvania prior to the Veteran's death. A common law marriage under Pennsylvania law could "only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by that." Staudenmayer v. Staudenmayer, 552 Pa. 253; 714 A.2d 1016, Westlaw (1998). The Pennsylvania Supreme Court held that in the absence of testimony as to whether such an express agreement occurred through the exchange of words in the present tense, "constant cohabitation" and a reputation of marriage which was "broad and general" would raise a rebuttable presumption of marriage. Id. The burden to prove a common law marriage was on the party alleging the marriage, and was characterized as a "heavy" burden. Id.

The appellant has never stated that she and the Veteran considered themselves married after they divorced in January 1993. In the September 2009 substantive appeal (VA Form 9), the appellant stated that she and the Veteran agreed on a no-fault divorce for financial reasons, and that shortly before the Veteran's death they were "talking about getting back together." The appellant's June 2015 hearing testimony reflects that she and the Veteran kept separate residences, but shared custody of their children, and that she often stayed at the Veteran's home. Indeed, she stated that she spent more time at his home than in her own home, and in fact was there most of the time. She suggested that at least part of the reason for this arrangement was that it was difficult for the Veteran to be around the children all the time. Overall, it appears from the appellant's testimony that she and the Veteran remained close and had an amicable relationship. 

While the appellant and the Veteran clearly had a close relationship and frequently cohabited together, according to her testimony, there is no evidence of an agreement to enter into a marriage, either by way of an exchange of words in the present tense or otherwise, or of a reputation of marriage that was "broad and general." It is also doubtful that they satisfied the "constant cohabitation" requirement, as they kept and lived in separate residences, notwithstanding the appellant's statement that she was more often at the Veteran's home than her own. Moreover, the fact that she and the Veteran were "talking about getting back together," as stated in her substantive appeal, also indicates that they did not consider themselves married at the time of his death. 

In short, there was no exchange of words in the present tense spoken for the purpose of entering into a legal relationship of husband and wife; nor is there a rebuttable presumption of common law marriage, as the "reputation of marriage" element is not satisfied, and it seems the "constant cohabitation" requirement is also not satisfied. See Staudenmayer, supra. The evidence of record, including the divorce decree, the fact that the appellant and the Veteran were "talking about getting back together," and their separation of residences weighs against a common law marriage. Thus, the "heavy burden" of showing a common law marriage is not satisfied. Finally, and significantly, the appellant has never claimed to have been married to the Veteran after the January 1993 divorce. 

Although the appellant asserts that she and the Veteran divorced for financial reasons, and suggested that the divorce and separation of residences had more to do with practicalities and the Veteran's difficulties living with their children than with the quality of the relationship itself, the fact remains that they legally divorced and did not remarry either by ceremony or under common law. 

In sum, at the time of the Veteran's death, the appellant was not married to him either statutorily (by ceremony) or under common law. As there was no attempted marriage after the January 1993 divorce, the "deemed valid" provisions of 38 C.F.R. § 3.52 do not apply. Because the appellant does not qualify as the Veteran's surviving spouse under VA law, she is not eligible for DIC benefits. See 38 C.F.R. § 3.5. 

The Board sincerely empathizes with the appellant and has carefully considered her testimony. However, the Board is bound by the law, and this decision is dictated by the relevant code sections and regulations discussed above, which show that the legal requirements for status as a surviving spouse, and hence eligibility for DIC benefits, are not satisfied. The Board is without authority to grant benefits on any other basis. See 38 U.S.C.A. §§ 503, 7104 (West 2014); Harvey v. Brown, 6 Vet. App. 416, 425 (1994); see also Smith v. Derwinski, 2 Vet. App. 429, 432-33 (1992). 

As the appeal must be denied as a matter of law, the benefit-of-the-doubt rule does not apply. Sabonis v. West, 6 Vet. App. 426, 430 (1994); see also 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2014).


ORDER

Entitlement to recognition as the surviving spouse of the deceased Veteran for the purpose of entitlement to disability and indemnity compensation (DIC) benefits is denied. 


____________________________________________
P. M. DILORENZO 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs