Citation Nr: 1505521 
Decision Date: 02/05/15 Archive Date: 02/18/15

DOCKET NO. 01-01 086 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to a rating greater than 20 percent for service-connected chronic low back pain with degenerative disc disease prior to August 29, 2007. 


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. Rutkin, Counsel

INTRODUCTION

The Veteran served on active duty from June 1979 to September 1979, from May 1981 to May 1984, and from December 1990 to July 1991. He also served in the United States Army Reserve. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2000 rating decision of the Montgomery, Alabama, Department of Veterans Affairs (VA) Regional Office (RO). The Board issued a decision on this claim in May 2013 which denied a rating greater than 20 percent for the Veteran's low back disability prior to August 29, 2007, and granted a rating of 40 percent from that date forward. That part of the Board's decision denying a rating greater than 20 percent for the low back disability prior to August 29, 2007 was vacated by an August 2014 Order of the United States Court of Appeals for Veterans Claims (Court), which endorsed a joint motion for remand (JMR) and remanded the matter for further action in accordance with the terms of the JMR. Specifically, the Board was instructed to address whether reported monthly flare-ups establish entitlement to a higher rating prior to August 29, 2007. The evaluation of the Veteran's low back disability as of August 29, 2007 was not challenged and is no longer in appellate status. Thus, this decision is limited to whether a higher rating is warranted prior to that date. 

The Veteran testified at a hearing before a Veterans Law Judge (VLJ) in August 2001, and testified at a hearing before a second VLJ in December 2009. Transcripts of both hearings are of record. Because two VLJs held hearings in this appeal, the following decision will be reviewed and signed by a panel of three VLJs, which includes the VLJs who presided over the August 2001 and December 2009 hearings. See 38 C.F.R. § 20.707 (2014). By way of a September 2012 letter, the Veteran was afforded the opportunity to request a hearing before a third VLJ who would participate in this decision. See Arneson v. Shinseki, 24 Vet. App. 379 (2011). The Veteran did not respond. Accordingly, the Board will proceed with a decision. 

In November 2001, July 2003, and March 2010, the Board remanded the claim for additional development and adjudicative action. 

In a May 2012 rating decision, the RO granted, effective August 25, 2011, a 20 percent rating for radiculopathy of the left lower extremity and a 10 percent rating for radiculopathy of the right lower extremity, associated with the Veteran's low back disability. As the Veteran has not appealed this evaluation or the effective date assigned, the issue of a higher and/or earlier evaluation for radiculopathy of the lower extremities is not before the Board. 

A review of the Virtual VA paperless claims processing system reveals VA treatment records dated through January 2012, which were considered by the RO in a May 2012 supplemental statement of the case (SSOC). No evidence has been added since that time. 


FINDING OF FACT

Prior to August 29, 2007, the Veteran's low back disability was manifested by pain and limited range of motion with flexion exceeding 30 degrees. 


CONCLUSION OF LAW

Prior to August 29, 2007, the criteria for a rating in excess of 20 percent for a low back disability have not been met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.3, 4.40, 4.45, 4.71a, Diagnostic Codes 5242, 5243 (2014); 38 C.F.R. § 4.71a, Diagnostic Codes (DCs) 5292, 5293, 5295 (2002 & 2003).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b). This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Veteran has received all essential notice, has had a meaningful opportunity to participate in the development of his claim, and is not prejudiced by any technical notice deficiency along the way. See Conway v. Prinicipi, 353 F.3d 1369 (Fed. Cir. 2004). In this regard, VCAA notice letters dated August 2003, March 2006 and March 2010 together informed the Veteran of all the elements required by 38 C.F.R. § 3.159(b), as stated above, with regard to establishing entitlement to an increased rating. The letters notified the Veteran of VA's general criteria for rating service-connected disabilities, provided examples of the types of evidence that might support the claim for a higher rating, and also informed the Veteran of his and VA's respective responsibilities for obtaining relevant records and other evidence in support of his claim. See Vazquez-Flores v. Shinseki, 24 Vet. App. 94, 97-103 (2010); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Although the letters were not provided prior to initial adjudication, the Veteran's claim has not been prejudiced as he had ample opportunity to submit additional information and evidence after receiving all required notice before the claim was subsequently readjudicated in several supplemental statements of the case (SSOC's), most recently in May 2012 . Therefore, the purpose of VCAA notice was not frustrated. See Mayfield v. Nicholson, 19 Vet. App. 103, 121 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006); see also Medrano v. Nicholson, 21 Vet. App. 165, 170 (2007). 

Regarding the duty to assist, the RO has obtained the Veteran's service treatment records, VA outpatient treatment records dated through January 2012, and available private treatment records. The RO also provided the Veteran with appropriate VA examinations. As the issue at hand concerns whether the criteria for a higher rating have been satisfied prior to August 29, 2007, further examination is not warranted. 

In light of the above, the Veteran has had a meaningful opportunity to participate effectively in the processing of this claim, and no prejudicial error has been committed in discharging VA's duties to notify and assist. See Shinseki v. Sanders, 556 U.S. 396, 407, 410 (2009); Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004); Arneson v. Shinseki, 24 Vet. App. 379, 389 (2011); Vogan v. Shinseki, 24 Vet. App. 159, 163 (2010). 

The Board is satisfied that the agency of original jurisdiction (AOJ) has substantially complied with the Board's November 2001, July 2003, and March 2010 remand directives as they pertain to the increased rating claim. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). As noted above, the Veteran was afforded appropriate VA examinations. The Board has also addressed the terms of the JMR by explaining why the Veteran's reported flare-ups do not warrant a higher rating, as discussed below. 

The Veteran testified at August 2001 and December 2009 hearings before the Board. Under 38 C.F.R. § 3.103(c)(2) (2012), it is the responsibility of the hearing officer to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that the hearing officer has two distinct duties under section 3.103(c)(2). First, the hearing officer must explain fully the issues still outstanding that are relevant and material to substantiating the claim by explicitly identifying them for the claimant. Id. at 496 (finding that a hearing officer's inquiries relevant to the existence of a current disability and a nexus to service did not equate to explaining to the claimant that these issues were material to substantiating the claim). Second, the hearing officer must suggest that a claimant submit evidence on an issue material to substantiating the claim when such evidence is missing from the record or when the testimony at the hearing raises an issue for which there is no evidence in the record. Id. at 496-97. 

Importantly, the Court also observed that the rule of prejudicial error applies in assessing any deficiency with respect to the hearing officer's duties under section 3.103(c). Id. at 498. Citing Sanders, 556 U.S. at 407, 410, the Court noted in this regard that the rule of prejudicial error requires a case-by-case determination as to whether the error in question was harmless. Id. Thus, in Bryant, 23 Vet. App. at 498-99, the Court concluded that although the hearing officer did not explicitly lay out the material issues of medical nexus and current disability, the "clarity and completeness of the hearing record was intact" and the purpose of section 3.103(c)(2) fulfilled because the record reflected that these issues were developed by VA, including the provision of a VA examination, and there was no indication that the appellant had any additional information to submit. 

Here, with respect to the Veteran's increased rating claim, the outstanding issue is whether the criteria for an increased rating have been satisfied. At the hearings, the VLJs explained the issue and asked questions regarding the severity of the Veteran's service-connected back disability. The VLJs also asked the Veteran questions regarding his current back symptoms and associated functional impairment. They elicited relevant testimony regarding symptoms that might warrant a higher rating for the service-connected back disability, such as pain, and asked the Veteran where he was treated for his back. 

Any deficiencies in the two Board hearings under section 3.103(c)(2) were harmless. In this regard, VA has otherwise developed this claim, including obtaining records on the Veteran's behalf and providing VA examinations in accordance with the Board's remand directives, as discussed above with respect to VA's duty to assist under the VCAA. The VA examination reports directly address the outstanding issues in the claim. Moreover, the Veteran did not raise any new issues pertaining to his claim at the hearings, and there is no indication of any outstanding evidence that might be submitted. Id. at 499. 

Thus, given the development undertaken by VA with respect to these claims, and in light of the Veteran's testimony at the hearing, the "clarity and completeness of the hearing record [is] intact" and the purpose of section 3.103(c)(2) to develop the record has been fulfilled. Id. at 498-99. Accordingly, the Veteran's right to a Board hearing has been satisfied and no prejudicial error exists with regard to the hearing officer's duties under section 3.103(c)(2). See id.; see also Sanders, 556 U.S. at 407, 410.


II. Analysis

The Veteran contends that he is entitled to a rating in excess of 20 percent for his service-connected low back disability prior to August 29, 2007. For the following reasons, the Board finds that entitlement to a rating greater than 20 percent prior August 29, 2007 for the low back disability is not established. 

VA has adopted a Schedule for Rating Disabilities to evaluate service-connected disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 3.321; see generally, 38 C.F.R. § Part IV. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10 (2014). The percentage ratings in the Schedule for Rating Disabilities represent, as far as practicably can be determined, the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2014). Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. 

Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7 (2014). Otherwise, the lower rating will be assigned. Id. All reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. The schedule recognizes that disability from distinct injuries or diseases may overlap. See 38 C.F.R. § 4.14 (2014). However, the evaluation of the same disability or its manifestations under various diagnoses, which is known as pyramiding, is to be avoided. Id.

Because the level of disability may have varied over the course of the claim, the rating may be "staged" higher or lower for segments of time during the period under review in accordance with such variations, to the extent they are sufficient to warrant changes in evaluation based on the applicable rating criteria. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). For increased-rating claims, where a claimant seeks a higher evaluation for a previously service-connected disability, it is the present level of disability that is of primary concern, and VA considers the level of disability for the period beginning one year prior to the claim for a higher rating. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994); see also 38 U.S.C.A. § 5110(b)(2) (West 2014); 38 C.F.R. § 3.400(o)(2) (2014). 

In evaluating disabilities of the musculoskeletal system, consideration must be given to functional loss, including due to weakness and pain, affecting the normal working movements of the body in terms of excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40; see Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011) (holding that pain "must actually affect some aspect of 'the normal working movements of the body' [under] 38 C.F.R. § 4.40 in order to constitute functional loss" warranting a higher rating). With respect to disabilities of the joints, consideration is given as to whether there is less movement or more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement, as well as swelling, deformity, or atrophy of disuse. 38 C.F.R. § 4.45 (2014). 

Sections 4.40 and 4.45 of the regulations thus require a determination of whether a higher rating may be assigned based on additional functional loss as a result of the above factors, including on repeated use and during flare-ups of symptoms, beyond any limitation reflected on one-time measurements of range of motion. DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995) (holding that the provisions of 4.40 and 4.45 are not subsumed by the DC's applicable to the affected joint). However, a higher rating based on functional loss may not exceed the highest rating available under the applicable diagnostic code(s) pertaining to range of motion. See Johnston v. Brown, 10 Vet. App. 80, 85 (1997) (holding that because the maximum rating available under the diagnostic code pertaining to limitation of motion of the wrist had already been assigned, remand was not warranted for consideration of functional loss due to pain under § 4.40). 

The Veteran filed his claim for an increased rating in November 1999, from which the present appeal stems regarding the proper rating to be assigned. During the pendency of this claim, the criteria for rating back disabilities in the VA Schedule for Rating Disabilities were revised effective September 23, 2002, and again effective September 26, 2003. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the Board may not apply a current regulation prior to its effective date, unless the regulation explicitly provides otherwise. See VAOPGCPREC 7-2003 (Nov. 19, 2003); Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003) (overruling Karnas v. Derwinski, 1 Vet. App. 308 (1991) to the extent it conflicts with the precedents of the United States Supreme Court and the Federal Circuit). However, the Board is not precluded from applying prior versions of the applicable diagnostic codes under 38 C.F.R. § 4.71a to the period on or after the effective dates of the new diagnostic codes if the prior versions were in effect during the pendency of the appeal, as is the case here. Therefore, the Board may evaluate the Veteran's service-connected low back disability under the earlier diagnostic codes and the current diagnostic codes, as of their effective dates, in order to determine which version would accord him the highest rating. 

Under the previous criteria, DC 5292 provides for the assignment of a 10 percent evaluation for slight limitation of motion of the lumbar spine. A 20 percent evaluation is assigned for moderate limitation of motion of the lumbar spine. A maximum 40 percent evaluation is assigned for severe limitation of motion. 38 C.F.R. § 4.71a (2003). 

Under the old DC 5295, which pertains to lumbosacral strain, a 10 percent rating is assigned for characteristic pain on motion. 38 C.F.R. § 4.71a, DC 5295 (2003). A 20 percent rating is warranted for muscle spasm on extreme forward bending, or loss of lateral spine motion, unilateral, in standing position. Id. A maximum disability rating of 40 percent is assigned for severe lumbosacral strain when there is listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a (2003). 

The words "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6 (2014). Although the use of similar terminology by medical professionals should be considered, it is not dispositive of the issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C.A. § 7104 (West 2014); 38 C.F.R. §§ 4.2, 4.6 (2014). Moreover, guidance can be obtained from the amended regulations. In adopting specific ranges of motion to define what is normal, as discussed below, VA stated that the ranges of motion were based on the American Medical Association Guides to the Evaluation of Permanent Impairment, 2nd ed., (1984), which is the last edition of the Guides that measured range of motion of the spine using a goniometer. See supplementary information, 67 Fed. Reg. 56,509 (Sept. 4, 2002). Therefore, even though pre-2003 regulations did not define normal range of motion for the spine, the current definition is based on medical guidelines in existence since 1984. There is no inconsistency, then, in using the amended regulations pertaining to range of motion of the spine as guidance in rating spine disabilities under the old criteria. 

Under old DC 5293, mild intervertebral disc syndrome (IDS) is assigned a 10-percent rating and moderate IDS with recurring attacks is assigned a 20-percent rating. Severe IDS with recurring attacks and intermittent relief is assigned a 40-percent rating. A 60-percent rating is assigned when there is pronounced IDS with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to the site of the diseased disc, with little intermittent relief. 38 C.F.R. § 4.71a (2001). 

The regulations regarding IDS were revised effective September 23, 2002. Under the revised regulations, IDS (preoperatively or postoperatively) is evaluated either on the total duration of incapacitating episodes over the past 12 months or by combining under 38 C.F.R. § 4.25 (the combined rating table) separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher evaluation. 

Under these revised standards, IDS is assigned a 10 percent evaluation when the Veteran has incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months. A 20 percent evaluation is warranted when the Veteran has incapacitating episodes having a total duration of a least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent evaluation is warranted when there are incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A 60 percent evaluation is warranted when there are incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. These criteria are the same in the amendment effective September 26, 2003. 38 C.F.R. § 4.71a (2002-2012). 

Specific to disabilities of the spine, the current rating schedule provides for the evaluation of all spine disabilities under a General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula), unless the disability is rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (DC 5243). See 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. The evaluation of intervertebral disc syndrome will be discussed below. Under the General Rating Formula:

A 10 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. 

A 20 percent evaluation is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 40 percent evaluation requires forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. 

A 50 percent evaluation requires unfavorable ankylosis of the entire thoracolumbar spine. 

A 100 percent evaluation is warranted where unfavorable ankylosis of the entire spine is demonstrated. 

See id. These criteria are to be applied irrespective of whether there are symptoms such as pain (whether or not it radiates), stiffness, or aching in the affected area of the spine. Id. This is because the criteria "are meant to encompass and take into account the presence of pain, stiffness, or aching, which are generally present when there is a disability of the spine." 68 Fed. Reg. 51, 454, 51,455 (August 27, 2003) (Supplementary Information). 

Unfavorable ankylosis is defined, in pertinent part, as "a condition in which the entire thoracolumbar spine is fixed in flexion or extension." Id., Note (5). Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. 

Under DC 5243, intervertebral disc syndrome (pre-operatively or post-operatively) is to be evaluated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25 (2012). 38 C.F.R. § 4.71a, Note (6). 

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent rating is warranted if incapacitating episodes have a total duration of at least one week but less than 2 weeks during the past 12 months; a 20 percent evaluation is warranted if incapacitating episodes have a total duration of at least two weeks but less than four weeks; a 40 percent rating is warranted if the total duration is at least four weeks but less than six weeks; and a 60 percent rating is warranted if the total duration is at least six weeks. See 38 C.F.R. § 4.71a (DC 5243). 

An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. See 38 C.F.R. § 4.71a Note (1). 

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, Note (2). 

A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence on any issue material to the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. When the evidence supports the claim or is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); see also Wise v. Shinseki, 26 Vet. App. 517, 532 (2014). If the preponderance of the evidence weighs against the claim, it must be denied. See id.; Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 

Turning to the evidence of record, a February 2000 VA spine examination reflects the Veteran's complaints of chronic low back pain with it being occasionally severe. He indicated that any physical activity aggravates the pain, and that he experienced flare-ups approximately once a month, lasting for approximately two weeks. He reported being unable to do anything during the flare-ups, but stated that prescribed medication decreases the pain. The Veteran admitted to taking Naprosyn and Robaxin to alleviate his service-connected low back pain. 

Upon physical examination testing, the VA examiner noted that the Veteran was unable to bend or lift weights during flare-ups, and he exhibited mild tenderness over the right lower paraspinals bilaterally. Range of motion testing reflected forward flexion to 70 degrees, extension to 25 degrees, bilateral lateral flexion to 30 degrees, and bilateral lateral rotation to 30 degrees. The Veteran expressed pain at 70 degrees of forward flexion, 25 degrees of extension, and 30 degrees of bilateral lateral flexion and bilateral lateral rotation. X-ray testing results ruled out degenerative joint disease of the lumbar spine, and the VA examiner diagnosed the Veteran with chronic low back pain secondary to degenerative disc disease at L3-L4, paramedian posterior disc herniation at L4-L5 and borderline spinal stenosis at L4-L5. 

At the August 2001 Board hearing, the Veteran testified that he has daily chronic pain in his back, along with stiffness and muscle spasms. He stated that the back pain becomes worse when sitting for a prolonged period of time, and he admitted to missing days from work due to the back pain. 

In December 2001, the Veteran was afforded his second VA examination for his service-connected low back disability. He reported a history of constant pain in his lower back, which worsened with any type of activity, any movement, prolonged lying down, or prolonged sitting. He admitted to taking Ultram, Robaxin, Daypro, and Elavil for his pain associated with his service-connected back disability. Additionally, the Veteran informed the VA examiner that he wore a back brace, but did not use any cane or crutches. 

Physical examination testing revealed a normal posture and gait with no use of any ambulatory aids. There was no tenderness over the lumbosacral spine, and neurological testing was essentially normal without any evidence of focal neurological deficits. Range of motion testing showed forward flexion to 70 degrees, backward extension to 20 degrees, bilateral lateral flexion to 30 degrees, and bilateral lateral rotation to 30 degrees. The VA examiner noted that forward flexion to 70 degrees was moderately painful and limited and right lateral movements were more painful, causing a feeling of stretching in the left side of the lower back. Straight leg raising test bilaterally was to 90 degrees and negative. Deep tendon reflexes were 1-2+ bilaterally symmetrical, and plantars were deemed "down-going." The VA examiner concluded that the functional loss due to pain of the thoracolumbar spine was moderate. Neurological testing was normal without any evidence of any focal neurological deficits, and x-ray testing revealed left paramedian herniated nucleus pulposus at L5-S1 with inferior extrusion. The VA examiner diagnosed the Veteran with low back pain with left paramedian herniated nucleus pulposus at lumbar-5/sacral-1 without sciatic neuropathy symptoms. The VA examiner specifically noted that functional loss due to pain in the lower back was moderate. 

At an August 2007 VA examination, the Veteran reported that that the pain associated with his service-connected low back disability is continuous and located in the lower back, with occasional radiation to the left thigh and the knee. The Veteran stated that the pain is made worse by standing, sitting, physical activity, and at bedtime. He admitted to losing an occasional day at work because of his back and has been on pain medication, muscle relaxants, and non-steroidal anti-inflammatory drugs (NSAIDS) for his back. He further indicated that he has flare-ups once a month lasting for approximately two weeks. The Veteran further added that he uses a back brace on occasion, can walk two blocks, and has no problems with activities of daily living. 

Physical examination testing reflected minimal tenderness at the L4-S1 level in the midline with no sciatic nerve tenderness bilaterally or spasms. Range of motion testing showed forward flexion to 40 degrees, extension to 20 degrees, right lateral bending to 20 degrees, left lateral bending to 25 degrees, and bilateral lateral rotation to 25 degrees. Straight leg raising test was positive on the right at 65 degrees and on the left at 60 degrees. There was no sensory loss on either lower extremity. Quadriceps strength was 0 to grade 1 bilaterally, dorsiflexion of both ankle and feet was grade 5 bilaterally, plantar flexion on the right was grade 5, and plantar flexion on the left was grade 3-4. All deep tendon reflexes were +4 except the left ankle jerk which was +2. The VA examiner noted that after repetitive use, there appeared to be an increased loss of 10 percent in all modalities due to pain as well as the Veteran's fears that he would injure himself. Magnetic resonance imaging (MRI) test results were consistent with S1 nerve root involvement primarily on the left, which the VA examiner concluded resulted in a moderately severe disability. 

At an August 2011 VA examination, the reported progressive degeneration of the lumbar spine since the initial injury in 1991. He described flare-ups with overuse and sometimes flare-ups without known insult. He admitted to limiting his activity and taking pain medication for flare-ups, only to receive moderate results. He rated the pain associated with his service-connected low back disability at a 7 out of 10 in terms of severity. 

Physical examination testing revealed localized tenderness or pain to palpation on the paraspinal strain with left-sided spasm. The VA examiner noted that the spasms caused the Veteran to display an abnormal gait. Range of motion testing revealed forward flexion to 35 degrees, extension to 10 degrees, right lateral flexion to 10 degrees, left lateral flexion to 15 degrees, and bilateral lateral rotation to 10 degrees. The VA examiner noted that the Veteran was unable to perform repetitive-use testing with three repetitions due to the onset of spasms. The VA examiner also indicated that the Veteran has additional limitation in range of motion of the back following repetitive-use testing as well as functional loss. The VA examiner noted that the contributing factors were less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, and disturbance of locomotion. Muscle strength testing revealed active movement against some resistance for hip flexion, ankle plantar flexion, ankle dorsiflexion, and great toe extension. There was active movement against gravity for bilateral knee extension and no muscle atrophy. Reflex testing was normal (2+) for both knees and both ankles, and sensory testing was normal for the bilateral upper anterior thighs (L2), bilateral thigh/knee (L3/4), lower leg/ankle (L4/L5/S1) and foot/toes (L5). Straight leg raising test was negative on the right and positive on the left. The VA examiner also noted the presence of radicular pain due to radiculopathy with mild constant pain of the right lower extremity, moderate constant pain in the left lower extremity, moderate intermittent pain in the right lower extremity, moderate intermittent pain in the left lower extremity, moderate paresthesias and/or dysesthesias of the right lower extremity, moderate paresthesias and/or dysesthesias of the left lower extremity, and mild numbness of the right lower extremity and left lower extremity. The VA examiner also noted the presence of radiating pain on apprehension testing in posterior left leg with the involvement of the L2/L3/L4 left femoral nerve and the left L4/L5/S1/S2/S3 sciatic nerve. The VA examiner indicated that the severity of the radiculopathy to be mild on the right and moderate on the left. The VA examiner did not see any neurologic abnormalities, but noted the presence of intervertebral disc syndrome. It was noted that over the past 12 months, the total duration of all incapacitating episodes was at least two weeks but less than four weeks. The VA examiner noted that the Veteran's service-connected back disability impacted his ability to work in that he could not complete laborious tasking with an overall limitation in an ability to labor. However, he could labor at sedentary task if he is able to move around from time to time. After x-ray testing, the VA examiner diagnosed the Veteran with lumbar degenerative joint disease and lumbar degenerative disc disease. 

At a November 2011 VA examination, the Veteran reported constant sharp pain in his lower back. He reported flare-ups two to three times a month, which lasted up to 8 days. Increased activity caused him increased pain. He was currently employed at the same job since 1991. He denied any bowel or bladder dysfunction. He also denied any incapacitating episodes during the past 12 months. The Veteran had forward flexion to 35 degrees; extension to 0 degrees; right and left lateral bending to 20 degrees; right lateral rotation to 10 degrees; and left lateral rotation to 25 degrees. He stated that he was fearful of causing himself pain so he abbreviated his range of motion for fear of increasing his discomfort. All major muscle groups in both lower extremities were 5/5. The Veteran has a stocking type of hypesthesia in the right lower extremity in no dermatome distribution. Deep tendon reflexes at the knees were 4+ and at the ankles were 3+. Testing loss of functioning after repetitive motion was not feasible because of the Veteran's limited motion, noted above. There was no spasm, swelling, heat, or redness. There was some tenderness in the lumbosacral area in the midline. Straight leg raising was positive. The diagnosis was chronic low back strain. The examiner stated that the Veteran was experiencing a moderate degree of disability as a result of his low back condition. Lower extremity electromyelogram was scheduled in December 2011, but the test was incomplete because the Veteran could not tolerate needles sticks. Lumbar radiculopathy could not be ruled out.

Private and VA outpatient treatment records reflect continuing complaints and treatment for the Veteran's service-connected low back disability. An October 1998 VA treatment record reflects complaints of chronic back pain. He reported chronic pain in the left sacroiliac joint area with radiating pain down to the left hip. Physical examination of the extremities revealed full range of motion with no hot, red, swollen, or tender joints. Strength testing was 5+ in the upper and lower extremities and straight leg raising test elicited some very mild pain. He was assessed with chronic back pain in the left sacroiliac joint. 

In a July 1999 private treatment record, the Veteran complained of low back pain radiating to the buttocks after moving boxes. Straight leg lifting caused increased pain. Physical examination testing revealed pain in the low back on movement of the legs and back, but no pain on palpation. He exhibited good mass, strength, and tone of lower extremities. Flexion, abduction, and external rotation were negative; however, straight leg lift testing was noted to cause pain in the low back. He was assessed with musculoskeletal spasms of the low back. 

In November 1999, VA outpatient treatment records reflect complaints of frequent and severe low back pain. It was noted that the pain was mostly in the lower sacroiliac area. After physical examination testing, the VA physician diagnosed him with chronic back pains. The Veteran reported for a follow-up visit at his local VA outpatient treatment facility in June 2000, following a March 2000 computed tomography (CT) scan. The March 2000 CT scan showed mild degenerative disk L3-4, a small left paramedical posterior disk herniation, and borderline spinal stenosis from prominent ligamentum flava L4 and L5. Physical examination of the Veteran showed mild tenderness of the left sacroiliac joint with no spinal tenderness, nor hot swollen joints. 

In May 2001, the Veteran visited a private physician for a follow-up of his chronic and recurrent low back pain. In the May 2001 private treatment note, it was reported that the Veteran was last seen in April 2001, and treated with Naprosyn and Skelaxin for pain. The pain resolved; however, it returned after lifting a chair. The Veteran described the pain as a sharp, stabbing pain with no involvement of the legs. After physical examination testing, he was assessed with chronic low back pain with no involvement of the legs. 

Private MRI testing conducted in May 2003 revealed degenerative disc disease at L3-4 and L4-5 consistent with the Veteran's complaints of low back pain. 

An August 2006 VA treatment record shows complaints of chronic back pain since 1991. The Veteran stated that the pain was worse and bothers his neck as well. He described the pain as an ache with a muscle spasm, which is worsened by lifting. He denied any radiation associated with it, but also claimed that the pain in the back of the neck is on both sides and hurts worse when he looks up or down. After a physical examination, the Veteran was diagnosed with chronic back pain. 

A follow-up treatment note dated October 2006 reflects that the Veteran continued to have chronic low back pain for several years. He described the pain as being located in the lower part of his back and radiating occasionally to the left lower extremity. He denied any weakness, numbness, bowel, or bladder complaints. Upon physical examination testing, the VA examiner noted that flexion was within normal limits, extension was normal, and side bending bilaterally was slightly limited. Bilateral straight-leg raising test in the sitting position was negative, sensory examination testing was intact to light touch, and strength was 5/5 in both lower extremities. The VA physician also noted that the Veteran's gait was stable without any assistive device. The VA physician reported no localized tenderness in the lumbosacral spine except for a small area on the L5 region where some mild tenderness was found. No paraspinal muscle spasm was noted. He was diagnosed with lumbar spondylosis. It was recommended that he lift no more than 25 pounds while at work, no repetitive motions, and to take breaks for at least 10 to 15 minutes every two hours while at work. 

In June 2007, the Veteran requested referral to a private bone and joint clinic for his low back pain. He reported continuing pain at the level of L3-L5. The private physician noted that x-rays were negative, and the Veteran demonstrated good mass, strength, and tone of the legs. There was normal sensation, deep tendon reflexes were intact, and external rotation of the hips was negative. However, straight leg left testing caused increased pain in the low back, and therefore the Veteran was referred to the bone and joint clinic for further evaluation. 

According to the June 2007 private medical report from the bone and joint clinic, the Veteran complained of severe spasms of the low back directly over the lumbar spine and radiating up the left mid back, left leg, and almost the knee. Physical examination testing revealed pain directly over the lumbar spine from L2 to L5 with straight leg lifting causing pain in the left leg at approximately 15 to 20 degrees and in the right leg at approximately 35 degrees. External rotation of the hip was negative, and x-rays showed straightening of normal curve with maintained disc spaces. 

Based on a careful review of the foregoing evidence, the Board finds that a rating in excess of 20 percent is not warranted under the old or current criteria prior to August 29, 2007. 

With regard to the old criteria, under DC 5292 a rating of 40 percent is assigned for severe limitation of motion of the lumbar spine. The evidence of record does not show severe limitation of motion. As discussed above, the current rating criteria with regard to range of motion can be used as guidance in determining whether the Veteran's limitation of motion is severe. Under the General Rating Formula, a 40 percent rating requires limitation of forward flexion to 30 degrees or less, indicating that severe limitation of motion would be one third of normal flexion, which is 90 degrees. See 38 C.F.R. § 4.71a, Plate V; see also 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, Note (2). Prior to August 29, 2007, the Veteran's forward flexion well-exceeded 30 degrees. In fact, as previously stated, at both the February 2000 and December 2001 VA examinations, the Veteran's forward flexion was to 70 degrees. The February 2000 VA examiner indicated that the Veteran expressed pain at 70 degrees of flexion, and the December 2001 VA examiner also indicated that the Veteran's forward flexion to 70 degrees was "moderately painful." Under Mitchell v. Shinseki, 25 Vet. App. 32, 42-43 (2011), pain must actually affect some aspect of the normal working movements of the body to constitute functional impairment warranting a potentially higher rating. Thus, as the Veteran always had more than 50 percent of forward flexion, the Board finds that severe limitation of motion has not been shown. 

Most significantly, no VA examiner or other medical professional who has evaluated the Veteran's low back disability has described it as severe or found that he had severe limitation of motion of the spine. Rather, the Veteran's low back disability has been characterized as moderate in nature. As previously mentioned, the December 2001 VA examiner concluded that the functional loss due to pain in his lower back was "moderate." Thus, a rating in excess of 20 percent, prior to August 29, 2007, is not warranted under DC 5292 for severe limitation of motion of the lumbar spine. 

Under the old DC 5295, a rating of 40 percent is assigned for severe lumbosacral strain when there is listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a (2003). 

A rating of 40 percent under the old DC 5295 is not warranted, prior to August 29, 2007. The Veteran's low back disability has never been characterized as severe by the examiners and medical professionals who have assessed his low back disability. Rather, it has been characterized as moderate in severity as noted by the December 2001 VA examiner. Moreover, the Veteran's subjective complaints are not consistent with his objective pathology. In this regard, at the February 2000 VA examination, the Veteran described the pain associated with his service-connected low back disability as being severe. However, the December 2001 VA examiner concluded that the functional loss due to pain of the thoracolumbar spine was moderate. Moreover, there has been no evidence of listing of the whole spine to the opposite side, positive Goldthwaite's sign, or marked limitation of forward bending in standing position. As noted above, the Veteran has demonstrated forward flexion to 70 degrees. He also had normal posture. And while there was some loss of lateral motion with osteo-arthritic changes or narrowing or irregularity of joint space, there has not been any evidence of abnormal mobility on forced motion. Accordingly, a 40 percent rating under DC 5295 for a severe lumbosacral strain may not be assigned prior to August 29, 2007. 

Additionally, there has been no evidence of IDS prior to August 29, 2007. Regardless, severe IDS with recurring attacks and intermittent relief has not been shown; nor did the Veteran have any incapacitating episodes. Neurological examination was essentially normal prior to August 29, 2007. For example, on VA examination in December 2001, neurological testing was essentially normal without any evidence of focal neurological deficits. The VA examiner diagnosed the Veteran with low back pain with left paramedian herniated nucleus pulposus at lumbar-5/sacral-1 without sciatic neuropathy symptoms. A VA outpatient treatment record dated in October 2006 showed that sensory examination testing was intact to light touch and strength was 5/5 in both lower extremities. Private treatment records dated in June 2007 also showed good mass, strength, and tone of the legs; normal sensation; and intact deep tendon reflexes. Therefore, an increased rating is not warranted under DC 5293 and/or 5243.

Furthermore, under the current General Rating Formula, a rating of 40 percent is assigned for limitation of forward flexion to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. Ratings in excess of 40 percent under the General Rating Formula require the presence of unfavorable ankylosis. See 38 C.F.R. § 4.71a. As discussed above, the Veteran's forward flexion has not been limited to 30 degrees or less prior to August 29, 2007. Moreover, there is no evidence of record indicating that he has favorable or unfavorable ankylosis of the lumbar spine. He has consistently demonstrated motion of the spine. Therefore, a rating in excess of 20 percent is not warranted under the General Rating Formula, prior to August 29, 2007. 

The Board has also considered whether the Veteran has additional disability of the spine beyond the recorded range of motion measurements, to include due to weakened movement, painful movement, excess fatigability, or incoordination, such as after repetitive use of the spine. See 38 C.F.R. §§ 4.40, 4.45; see also DeLuca, 8 Vet. App. at 206-07. The 20 percent rating assigned prior to August 29, 2007 already compensates the Veteran for functional impairment of the spine. His range of motion measurements do not exceed the criteria for a 20 percent rating, prior to August 29, 2007, even after repeated use. The evidence contained in the VA examination reports shows that the Veteran regularly had forward flexion to 70 degrees. This is so even with consideration of painful motion and other factors. The VA examiners in February 2000 and December 2001 identified endpoint pain during range of motion testing, but did not indicate that there was additional decreased motion of the lumbar spine based on the painful motion. Although the evidence does show that the Veteran experiences painful motion and other symptoms, it does not result in a higher rating unless it actually results in additional functional loss. See Mitchell, 25 Vet. App. at 38-43; DeLuca 8 Vet. App. at 204-7.

The Veteran's reported flare-ups do not cause additional functional impairment warranting a higher rating prior to August 29, 2007. The Board has considered the Veteran's statement at the February 2000 VA examination that he experienced flare-ups once a month for approximately two weeks, and that he was unable to bend or do anything during the flare-ups. However, the Board does not find it credible that the Veteran is essentially immobilized for half of each month, or half the year in total due to flare-ups. Indeed, if such were the case, these long periods of incapacitation could hardly be characterized as "flare ups" but would rather be an ongoing feature of disability, with alternating periods of relative abatement. While it may be true that about half of each month his symptoms are worse, and the other half there is some alleviation, not one of the numerous treatment records documenting the Veteran's low back problems from 1988 through 2007 indicate that for half of each month the Veteran is unable to bend or "do anything." 

Further, when a significant increase in back pain and spasms has occurred as, for example, in June 2007 when the Veteran experienced a recurrence of back pain after bending down to turn a valve, as in August 2004 when he reported a 10-day history of back spasm, as in May 2001 when he reported back pain that lasted for a few days after lifting a chair, and as in July 1999 when the Veteran reported back pain after moving boxes, which was assessed as a musculoskeletal spasm, the Veteran sought treatment for it. The Veteran's back pain may fluctuate in severity on a more frequent basis. However, these records show that he has generally sought treatment when the pain significantly increased or caused functional impairment, and none suggest that these episodes occurred on a monthly basis, or that the Veteran was unable to bend or "do anything" each month for two weeks at a time. Indeed, he did not even report such limitations when treated during the aforementioned flare-ups, which presumably were even more significant in that he sought medical attention for them. 

It is implausible that the Veteran would not mention on any of the occasions he sought treatment for back pain, which are many, that for nearly half a month each month, or for even a week each month, he was unable to bend or "do anything" because of flare-ups of back pain. His report of such a history at the February 2000 VA examination therefore is not credible, as it was made in support of a claim for benefits and is inconsistent with more probative evidence in the form of the contemporaneous treatment records, as shown above. The Board also notes that in November 2001 and August 2008, the Veteran sought leave from work due to flu-like symptoms and digestive health problems, respectively, as shown by the private treatment records, but the evidence does not show that he similarly sought leave from work due to back pain, certainly not on a regular basis and not even on an intermittent basis as would be indicated by two-week flare-ups each month of pain so severe that it reduced flexion to 0. A December 2001 VA general examination report, for example, reflects that the Veteran stated he worked at a warehouse and was able to do his job and activities without missing work, but that his back problem and fatigue "affects his occupation to a certain extent." This statement further indicates that the Veteran's flare-ups were not so severe as to prevent him from bending or doing anything, as reported at the February 2000 VA examination. 

There is no question that the Veteran experienced significant flare-ups of low back pain prior to August 29, 2007. However, the fact that he had such flare-ups does not by itself warrant a higher rating. Rather, they are already taken into account and built into the 20-percent rating assigned for this period based on the clinical findings and the credible evidence of how the Veteran's low back disability manifested, as discussed above. In this regard, "the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. There may have been occasions when a flare-up caused functional impairment that, if present over an extended period of time, would warrant a higher rating, as in June 2007 when the Veteran reported a severe back spasm. However, while there have been occasions of further reduced function during flare-ups, the credible evidence, as discussed above, shows that these episodes did not occur with such regularity or last for so long as to warrant a higher rating. Notably, the Court held in Voerth v. West, 13 Vet. App. 117, 122-23 (1999), that "temporal considerations are important" when determining whether a VA examination must be performed during a flare-up, and that occasional short-lived flare-ups must be distinguished in this regard from those cases where a person experiences a worsened condition for weeks or months which impairs earning capacity. The VA and private treatment records document clinical findings made at times when the Veteran reported a flare-up of symptoms, such as after moving boxes, and these have been taken into account in finding that the Veteran's low back disability more nearly approximated the criteria for a 20-percent rating during this time frame, as explained above. As already discussed, the Board does not find it credible that the Veteran experiences monthly flare-ups lasting two weeks at a time where his flexion is greatly reduced, or that his flare-ups result in a worsened condition for weeks or months at a time that further reduces earning capacity beyond the 20-percent rating already assigned. Rather, the Veteran has occasionally missed days from work over the years, and experienced occasional flare-ups with reduced functioning, and these episodes, in conjunction with ongoing back pain and reduced motion, are contemplated by the 20-percent rating assigned. In short, the preponderance of the evidence shows that the Veteran's flare-ups do not occur with a regularity or duration supporting a rating higher than 20 percent prior to August 29, 2007. See id.

The General Rating Formula also provides that neurologic abnormalities associated with disabilities of the spine are to be separately evaluated under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, General Rating Formula, Note (1). The Veteran is currently service-connected for radiculopathy of the left lower extremity and right lower extremity as secondary to the service-connected low back disability. See the May 2012 Decision Review Officer (DRO) decision. However, besides radiculopathy, there is no evidence of any neurologic abnormalities or findings related to the service-connected low back disability. In both December 2001 and August 2011, the VA examiners found no evidence of any other neurological abnormalities. In November 2011, the Veteran denied any bowel or bladder dysfunction. Thus, the medical evidence of record does not show associated objective neurologic abnormalities of bowel and bladder impairment such that a separate neurological disability rating, as it applies to his service-connected back disability, is warranted. 

The Board has also considered whether a higher or separate rating is warranted under 38 C.F.R. § 4.71a, Diagnostic Code 5003, for degenerative arthritis. In this regard, the August 2011 VA examiner diagnosed the Veteran with lumbar degenerative joint disease and lumbar degenerative disc disease. Under Diagnostic Code 5003, degenerative arthritis, when substantiated by x-rays, will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When, however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic code, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 20 percent disability rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations, and a 10 percent disability rating is warranted with x-ray evidence of involvement of two or more major joints or two or more minor joint groups. 

A higher rating is not available under DC 5003, as the Veteran's low back disability prior to August 29, 2007 is already rated as 20-percent disabling, which is the highest evaluation available under DC 5003. Moreover, a separate rating under DC 5003 cannot be assigned, as this would result in compensating the Veteran twice for manifestations of the same disability under various diagnoses, in violation of the rule against pyramiding. See 38 C.F.R. § 4.14. The Board also notes in the alternative that by its express terms, a rating is warranted for arthritis under DC 5003 only when limitation of motion is absent or not compensable under an appropriate diagnostic code, which is not the case here. Therefore, a separate or higher rating is not available under 38 C.F.R. § 4.71a, Diagnostic Code 5003.

With regard to staged ratings, although there may have been some fluctuations in severity of the Veteran's symptoms prior to August 29, 2007, the preponderance of the evidence shows that his low back disability has not met or approximated the criteria for a rating greater than 20 percent at any point during this period, for the reasons explained above. Thus, staged ratings are not warranted for the time period under review. See Hart, 21 Vet. App. at 509-10; Fenderson, 12 Vet. App. at 126. 

As there is no evidence or assertion of unemployability related to the Veteran's low back disability prior to August 29, 2007, the issue of entitlement to a total disability rating based on individual unemployability (TDIU) has not been raised. See 38 C.F.R. §§ 3.340, 4.16 (2014); Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). 

The Board has considered whether the Veteran's claim should be referred for an extraschedular rating. See 38 C.F.R. § 3.321(b) (2012); Thun v. Peake, 22 Vet. App. 111, 114 (2008). Because the ratings provided under the VA Schedule for Rating Disabilities are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstances, but nevertheless would still be adequate to address the average impairment in earning capacity caused by the disability. Thun, 22 Vet. App. at 114. However, in exceptional situations where the rating is inadequate, it may be appropriate to refer the case for extraschedular consideration. Id. The governing norm in these exceptional cases is a finding that the disability at issue presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1). 

In Thun, 22 Vet. App. at 115, the Court held that the determination of whether a claimant is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b) is a three-step inquiry. First, as a threshold factor, there must be a finding that the evidence of record presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Id. In this regard, the Board must compare the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. See id. If the rating criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, in which case the assigned schedular evaluation is adequate and no referral is required. Id. Second, if the schedular criteria are found to be inadequate to evaluate the claimant's disability, the Board must determine whether the exceptional disability exhibits other related factors such as marked interference with employment or frequent periods of hospitalization. Id. If so, then under the third step of the inquiry the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination of whether the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Referral for extraschedular consideration is not warranted. The Veteran's low back disability is manifested by symptoms and functional impairment expressly addressed by the rating criteria, including arthritis and disc disease, pain, spasms, and limited motion. See 38 C.F.R. § 4.71a, General Rating Formula (providing, in pertinent part, for ratings based on limited motion and spasms, irrespective of the presence of pain and whether or not it radiates), DC 5003 (arthritis); see also 38 C.F.R. §§ 4.40, 4.45, and 4.59 (addressing painful motion and functional limitations due to pain, fatigability, weakness, and incoordination, including on repetitive motion and due to flare-ups); DeLuca, 8 Vet. App. at 206-07. His reported numbness of the lower extremities has been awarded separate ratings for associated neurologic abnormalities under appropriate diagnostic codes, as provided for in the General Rating Formula. 

Although specific examples of functional impairment in the context of work and daily activities may not be mentioned in the criteria, including the use of a back brace and reported difficulties with prolonged standing and lifting heavy objects, such functional impairment is nevertheless contemplated by 38 C.F.R. §§ 4.40, 4.45 and the General Rating Formula under 38 C.F.R. § 4.71a. Indeed, the criteria are necessarily designed with a view toward compensating for functional impairment. See 38 C.F.R. § 4.10 (providing that the basis of disability evaluations is the ability of the body as a whole, or of the psych, or of a system or organ of the body, to function under the ordinary conditions of daily life including employment; see also 38 C.F.R. § 4.21 (2014) (providing that in view of the number of atypical instances, it is not expected that all cases will show all the findings specified in the criteria, but that coordination of rating with impairment of function will be expected in all instances). Further, the VA examiners and treating clinicians have not found the Veteran's low back disability to represent an exceptional or unusual disability picture. As noted in Thun, the rating criteria are averages and need not account for each individual circumstance in order to be adequate for evaluation purposes. Rather, the disability must be "exceptional" or "unusual." Thus, the Veteran does not have symptoms or manifestations associated with his low back disability that have been left uncompensated or unaccounted for by the assignment of a schedular rating. See Thun, 22 Vet. App. at 115. 

Accordingly, a comparison of the Veteran's low back disability and the rating criteria does not show "such an exceptional or unusual disability picture . . . as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b). Consequently, the Board finds that the available schedular evaluations are adequate to rate this disability. In the absence of this threshold finding, the second step of the inquiry, namely whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization is moot. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the claimant's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment). As no other disabilities are on appeal, consideration of the combined effects of the Veteran's service-connected disabilities for extraschedular purposes is not warranted. See Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014). Thus, the evaluation of this disability will not be referred for extraschedular consideration. 

In summary, the preponderance of the evidence weighs against a rating in excess of 20 percent for the Veteran's lumbar spine disability prior to August 29, 2007. Therefore, the benefit-of-the-doubt rule does not apply, and the claim must be denied for the time period on appeal. See Gilbert, 1 Vet. App. at 55. 


ORDER

Prior to August 29, 2007, an increased evaluation in excess of 20 percent for a low back disability, also claimed as chronic low back pain with degenerative disc disease, is denied. 


 
 MARK D. HINDIN K. OSBORNE
 Veterans Law Judge Veterans Law Judge
 Board of Veterans' Appeals Board of Veterans' Appeals


 ____________________________________________
 P. M. DILORENZO
 Veterans Law Judge 
 Board of Veterans' Appeals

Department of Veterans Affairs