http://www.va.gov/vetapp16/Files6/1644972.txt

Citation Nr: 1644972 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 10-35 236 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota

THE ISSUES

1. Entitlement to increases in the ratings (10 percent prior to March 6, 2012, and a combined 20 percent rating from that date) for a right knee disability.

2. Entitlement to increases in the ratings (10 percent prior to March 6, 2012, and a combined 20 percent rating from that date) for a left knee disability.

3. Entitlement to a rating in excess of 10 percent for a right ankle disability.

4. Entitlement to a rating in excess of 10 percent for a left ankle disability.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

James R. Siegel, Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from June 1996 to April 2001. These matters are before the Board of Veterans' Appeals (Board) on appeal from March and April 2009 rating decisions by the Milwaukee, Wisconsin Department of Veterans Affairs (VA) Regional Office (RO) that confirmed and continued the 0 percent ratings then in effect for the Veteran's bilateral knee and bilateral ankle disabilities. A July 2010 rating decision increased the ratings for each of these disabilities to 10 percent, effective February 13, 2009. A March 2012 rating decision granted a separate 10 percent rating for subluxation of each knee, effective March 6, 2012. In April 2014, a Travel Board hearing was held before the undersigned; a transcript is in the record. In January 2015, the Board remanded these matters. The case is now in the jurisdiction of the St. Paul, Minnesota, RO. 

The issues pertaining to the knees are characterized to reflect that combined staged ratings are assigned for the knees, and that both "stages" are on appeal. 

FINDINGS OF FACT

1. Prior to March 6, 2012, the Veteran's right knee disability was manifested by full extension and flexion no worse than 100 degrees, even with factors of pain and use (repetition) considered; subluxation or instability is not shown.

2. From March 6, 2012, the Veteran's right knee disability is manifested by full extension and flexion no worse than 110 degrees; more than slight subluxation is not shown.

3. Prior to March 6, 2012, the Veteran's left knee disability was manifested by extension no worse than 5 degrees and flexion no worse than 95 degrees, even with factors of pain and use (repetition) considered; subluxation or instability is not shown. 

4. From March 6, 2012, the Veteran's left knee disability is manifested by full extension and flexion no worse than 110 degrees; more than slight subluxation is not shown.

5. The Veteran's right ankle disability is manifested by no more than moderate limitation of motion.

6. The Veteran's left ankle disability is manifested by no more than moderate limitation of motion. 

CONCLUSIONS OF LAW

1. Ratings for the Veteran's right knee disability in excess of 10 percent prior to March 6, 2012 and/or in excess of 20 percent from that date are not warranted. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Codes (Codes) 5257, 5260, 5261 (2015).

2. Ratings for the Veteran's left knee disability in excess of 10 percent prior to March 6, 2012 and/or in excess of 20 percent from that date are not warranted. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Codes 5257, 5260, 5261 (2015).

3. A rating in excess of 10 percent for right ankle disability is not warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 4.71a, Code 5271 (2015).

4. A rating in excess of 10 percent for left ankle disability is not warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 4.71a, Code 5271 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). VA's duty to notify was satisfied by a letter dated in February 2009. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

The Veteran's VA medical records have been secured. She was afforded adequate VA examinations to assess the severity of her bilateral knee and bilateral ankle disabilities. She has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the U.S. Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. 3.103(c)(2) requires that a RO official or VLJ who conducts a hearing fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. During the April 2014 hearing, the presiding Judge identified the issues on appeal. The Veteran's testimony in response to questions posed reflects her awareness of what must be shown to substantiate her claims. A deficiency in the conduct of the hearing is not alleged. 

Factual Background, Legal Criteria and Analysis 

The Board has reviewed all of the evidence in the Veteran's record. Although the Board is required to provide reasons and bases supporting its decision, there is no need to discuss each item of evidence in the record. Hence, the Board will summarize the pertinent evidence as deemed appropriate, and the analysis will focus specifically on what the evidence of record shows, or does not show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

On March 2009 VA joints examination, the Veteran stated she had occasional pain in her knees and ankles. It was noted she had not seen a physician for her conditions. Examination of the knees found no joint effusion or crepitus. Range of motion was 0 to 120 degrees bilaterally without painful limitation. The collateral and cruciate ligaments were intact. McMurray's sign was negative. There was no rotatory instability. The Veteran was able to squat without difficulty. Examination of the ankles showed no evidence of swelling or tissue loss. Inversion and eversion were equal bilaterally. Dorsiflexion was 0 to 10 degrees bilaterally and plantar flexion was 0 to 45 degrees bilaterally. There was no additional functional impairment due to pain, weakness, fatigability, incoordination or flare-up. No assistive devices were in place. The knee and ankle disabilities had no effect on the Veteran's occupation or daily activities. The diagnoses were mild bilateral femoral syndrome of the knees and mild bilateral ankle strain. 

On January 2010 VA joints examination, the Veteran stated she was on medication for pain. It was noted she ambulated without the use of a cane. Examination found that she was able to stand on her toes and heels complaining of discomfort in both knees. The knees showed no evidence of atrophy. Range of motion of each knee was 0 to 100 degrees without painful limitation. She complained of pain to palpation of both knees. There was no evidence of joint swelling, increased heat or capsular thickening. No crepitus was elicited. The collateral and cruciate ligaments were intact. McMurray's sign was negative. There was no rotatory instability bilaterally. There was subjective tenderness to palpation of the knee joint itself, with no other gross abnormalities evident. Examination of the ankles found that dorsiflexion was 0 to 10 degrees and plantar flexion was 0 to 40 degrees without painful limitation. Inversion and eversion were normal, without painful limitation. There was no joint swelling. The Veteran stated that tendon inflammation occurred on occasion, but the examiner noted it was not present at that time. There was no additional functional impairment of the ankles or knees due to pain, weakness, fatigability, incoordination or flare-ups. The diagnoses were bilateral patellofemoral syndrome, bilateral ankle strain, bilateral knee tendinitis, not found and bilateral Achilles tendinitis, not found. 

VA outpatient treatment records show that in February 2009 the Veteran stated she had bilateral knee pain, ranging from 7-10/10, with associated swelling of the joint. She noted that the knee buckled once every other month. Examination found no muscle atrophy of either knee. There was tenderness to palpation along the bilateral joint lines. She had full active range of motion of all extremities. McMurray's was positive on the left. Drawer sign was negative. The diagnosis was bilateral knee pain. In December 2009, she was wearing a knee sleeve which she said helped with stability. Examination of the right knee found that range of motion was from 0 to 100 degrees without pain. There was tenderness to palpation medially and posteriorly. The knee was stable to varus/valgus stress. Range of motion of the left knee was from 5 to 95 degrees with tenderness at the extremes of motion, especially on extension. The medial and lateral joint lines were stable. Drawer sign was negative, and the knee was stable to varus/valgus stress. The diagnoses were bilateral knee pain and right Achilles tendinitis. The Veteran was seen for physical therapy for her knees and ankles in January and February 2010. In August 2010, she complained of bilateral knee pain and stated that medications and knee braces were not helping. Range of motion of the right knee was 0 to 100 degrees without pain. There was tenderness to palpation medially and posteriorly. There was no effusion, and the knee was stable to varus/valgus stress. Lachman's and drawer signs were negative. Examination of the left knee found minimal effusion. Range of motion was from 0 to 110 degrees with no tenderness noted. Lachman's and drawer signs were negative. The knee was stable to varus/valgus stress. The assessment was bilateral knee pain with no improvement with physical therapy or medication. In July 20112, the Veteran stated she was able to walk for 1/2 a block before she developed severe knee pain. Examination of the knees found no peripatellar swelling. There was no pain with patellar palpation. Range of motion was 0 to 110 degrees with pain at the extremes of flexion.

On March 2012 VA ankle examination, the Veteran stated she had flare-ups of bilateral ankle pain twice a year. Examination found that plantar flexion of the right ankle was to 25 degrees and dorsiflexion was to 10 degrees, with no objective evidence of pain. Plantar flexion of the left ankle was to 25 degrees and dorsiflexion was to 10 degrees, with no objective evidence of pain. The Veteran was able to perform repetitive use testing with no additional limitation of motion. It was noted she did not have functional loss or impairment of the ankles. There was no localized tenderness or pain on palpation of the ankles. Muscle strength testing was 5/5. Joint stability tests were normal bilaterally. She did not have ankylosis. The diagnosis was bilateral ankle strain. The examiner stated that the bilateral ankle condition did not impact on the Veteran's ability to work.

On March 6, 2012 VA knee examination, the Veteran stated she had flare-ups and pain on stairs. Examination of the right knee found range of motion of the right knee was 0 to 130 degrees with no objective evidence of pain. Left knee range of motion was 0 to 130 degrees with no objective evidence of pain. She was able to perform repetitive use testing with no additional limitation of motion of either knee. She did not have any functional loss and/or functional impairment of the knee. She did not have tenderness or pain to palpation. Muscle strength testing was 5/5 at the knees. Joint stability tests were normal bilaterally. There was evidence or history of slight recurrent patellar subluxation/dislocation bilaterally. The diagnosis was bilateral patellofemoral syndrome. The examiner stated that the Veteran's bilateral knee condition did not impact on her ability to work. 

VA outpatient treatment records show that in December 2012, examination of the bilateral knees showed no peripatellar swelling. There was no pain with patellar palpation of the medial or lateral joint lines. Range of motion was 0 to 110 degrees with pain at the extremes of flexion. The knees were stable to varus/valgus stress. McMurray's was negative. 

On June 2013 VA ankle examination, the Veteran stated she had flare-ups with occasional pain. Plantar flexion of the right ankle was to 30 degrees and dorsiflexion was to 10 degrees with no objective evidence of pain. Left ankle plantar flexion was to 30 degrees and dorsiflexion was to 10 degrees with no objective evidence of pain. She was able to perform repetitive use testing with no additional limitation of motion in either ankle. She did not have functional loss or impairment of either ankle. She did not have localized tenderness or pain on palpation. Muscle strength testing was 5/5 at the ankles. Joint stability tests were normal bilaterally. There was no ankylosis. The diagnosis was bilateral ankle sprains. The examiner stated that the Veteran's bilateral ankle condition did not impact on her ability to work.

On June 2013 VA knee examination, the Veteran stated she had occasional bilateral flare-ups. Range of motion of the each knee was 0 to 120 degrees with no objective evidence of pain. The Veteran was able to perform repetitive use testing with no additional limitation of motion. She did not have functional loss or impairment of either knee. There was no tenderness of pain on palpation of either knee. Muscle strength testing was 5/5 at the knees. Joint stability tests were normal bilaterally. There was no evidence or history of recurrent patellar subluxation/dislocation. The diagnosis was bilateral patellofemoral syndrome. 

In February 2014, VA contacted the physician who conducted the June 2013 VA examination. He stated that pain, weakness, fatigability or incoordination did not significantly limit the Veteran's functional ability during flare-ups or when the knees or ankles were used repeatedly over time. 

On August 2015 VA ankle examination, the Veteran stated there was progressive worsening of her bilateral ankle pain and swelling. She complained of constant bilateral ankle pain. It was noted she had tried ankle braces with no significant benefit and stopped. She denied any type of assistive device for ambulation. She stated that flare-ups lasted for several hours with walking or standing for more than five minutes. She noted that she was on medication. She said she had limited mobility related to the pain with walking and standing. Examination of the right ankle found that plantar flexion was 0 to 45 degrees and dorsiflexion was 0 to 20 degrees. There was no pain, to include with weight-bearing. There was mild diffuse tenderness along the medial and posterior aspects of the ankle. There was no evidence of crepitus. Plantar flexion of the left ankle was 0 to 45 degrees and dorsiflexion was 0 to 20 degrees. There was no pain, to include with weight-bearing. There was mild diffuse tenderness along the medial and posterior aspects of the ankle. No crepitus was noted. She was able to perform repetitive use testing of both ankles without additional limitation of motion. The examiner was unable to say whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over a period of time or with flare-ups, as it was reliant on the Veteran's description of activities that were affected over time. It was noted that swelling and interference with standing of both ankles were additional factors contributing to disability. Muscle strength testing of the ankles was 5/5 bilaterally. There was no muscle atrophy, ankylosis or instability noted. The diagnosis was chronic bilateral ankle strain/sprain. The examiner stated that the bilateral ankle condition had mild impact on the Veteran's ability to work, and such effects were related to pain associated with prolonged standing and walking activities. 

On August 2015 VA knee examination, the Veteran complained of progressive worsening bilateral knee pain, swelling and a locking sensation. She stated she had tried physical therapy with no significant benefits. She noted she took medication for pain as needed. She denied using any braces or assistive devices for ambulation. She denied any history of falls related to the knees. She said her pain was constant, 8/10. She stated her functional loss involved limited mobility of the knees, and this was related to walking, standing and bending. Examination of the right knee showed that range of motion was 0 to 120 degrees. There was pain on flexion, but it did not result in functional loss. There was no pain with weight-bearing. There was mild tenderness to palpation along the medial and lateral joint lines. There was evidence of crepitus. Left knee range of motion was 0 to 120 degrees with pain on flexion. It did not result in or cause any functional loss. There was no pain with weight-bearing. There was mild tenderness to palpation along the medial and lateral joint lines and there was evidence of crepitus. The Veteran was able to perform repetitive use testing without any additional limitation of motion of motion of either knee. The examiner was unable to say whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over time without resort to mere speculation, as it was reliant on the Veteran's description of activities that were affected over time. It was noted that swelling and interference with standing were additional factors of disability. Muscle strength testing was 5/5 at the knees. There was no muscle atrophy or ankylosis, and joint stability tests were normal bilaterally. It was also noted that the Veteran did not use an assistive device as a normal mode of locomotion. The diagnoses were bilateral patellofemoral syndrome and degenerative arthritis. 

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Reasonable doubt regarding the degree of disability is to be resolved in favor of the claimant, 38 C.F.R. § 4.3. Functional impairment is to be assessed on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The analysis is undertaken considering the possibility that different ratings may be warranted for different time periods. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

 Knees

A 30 percent rating is to be assigned when flexion of the leg is limited to 15 degrees, a 20 percent rating when flexion is limited to 30 degrees, and a 10 percent rating when flexion is limited to 45 degrees,. 38 C.F.R. § 4.71a, Code 5260.

A 50 percent rating is to be assigned when extension of the leg is limited at 45 degrees; a 40 percent rating when extension is limited at 30 degrees; a 30 percent rating when extension is limited at 20 degrees; a 20 percent rating when extension is limited at 15 degrees; a 10 percent rating when extension is limited at 10 degrees; and a 0 percent rating when extension is limited at 5 degrees. 38 C.F.R. § 4.71a, Code 5261.

Normal range of motion of the knee is 0 degrees of extension and 140 degrees of flexion. See 38 C.F.R. § 4.71a, Plate II.

A 30 percent rating is to be assigned for other knee disability manifested by recurrent subluxation or instability when severe; a 20 percent rating when moderate; and a 10 percent rating, when slight. 38 C.F.R. § 4.71a, Code 5257.

The Board will first address whether a rating in excess of 10 percent for either knee is warranted prior to March 6, 2012. To warrant a 20 percent rating, the evidence must show flexion limited to 30 degrees or extension limited to 15 degrees (or flexion limited to 45 degrees and extension limited at 10. The March 2009 and January 2010 VA examinations show that for both knees extension was full at 0 degrees, and flexion limited to no less than 100 degrees. Similar findings were present when the Veteran was seen at a VA outpatient treatment clinic in February 2009. The Board acknowledges that extension was 5 degrees and flexion 95 degrees in December 2009, but such findings do not support a rating in excess of 10 percent for either knee based on limitation of motion. 

In addition, subluxation or instability of either knee is not shown prior to March 6, 2012. The Board acknowledges that the Veteran reported knee buckling in February 2009, and that McMurray's test was positive in the left knee. However, the March 2009 and January 2010 VA examination found that that both knees were stable. Thus, a separate rating for such impairment is not warranted for either knee prior to March 6, 2012. See VAOPGCPREC 23-97 (July 1, 1997).

Based on the fact that the March 6, 2012 VA examination showed recurrent subluxation of each knee, the RO granted service connection for it and assigned a separate 10 percent rating effective the date of the examination. 

The Board will now address whether an increase in the combined rating of 20 percent is warranted. The March 2012, June 2013 and August 2015 VA examinations all show that extension was full and that flexion was limited to no less than 120 degrees. Although flexion was to 110 in each knee on VA outpatient visit in December 2012, this amount of limitation of motion is noncompensable. 

Similarly, the VA examinations all showed that there was no instability of either knee. There is no evidence of record that subluxation of either knee is more than slight. Accordingly, a higher rating based on either limitation of motion or instability is not warranted. 

The symptoms and related functional impairment the Veteran describes in her own reports do not meet the schedular criteria for a rating in excess of 10 percent for either knee prior to March 6, 2012, or a combined rating in excess of 20 percent from that date. Accordingly, the Board finds that the preponderance of the evidence is against these claims.

 Ankles 

A 20 percent rating is warranted when there is marked limitation of ankle motion. When limitation of ankle motion is moderate, a 10 percent rating is warranted. 38 C.F.R. § 4.71a, Code 5271.

Normal range of motion of the ankle is dorsiflexion from 0 to 20 degrees, and plantar flexion from 0 to 45 degrees. See 38 C.F.R. § 4.71a, Plate II.

The Veteran was examined for her bilateral ankle disabilities on five occasions during the course of her appeal. All VA examinations except the most recent one show that there is limitation of motion of each ankle. The March 2012 examination shows the greatest limitation of motion with plantar flexion to 25 degrees and dorsiflexion to 10 degrees, both bilaterally. The examination in June 2013 shows that plantar flexion in each ankle to 30 degrees and dorsiflexion to 10 degrees. The Board notes that the August 2015 VA examination shows that the Veteran has full range of motion of both ankles. Such findings reflect no more than moderate limitation of ankle motion, and do not warrant a rating in excess of 10 percent for either ankle.

The symptoms and related functional impairment the Veteran describes in her own reports do not satisfy the schedular criteria for a rating for right or left ankle disability in excess of 10 percent. Accordingly, the Board finds that the preponderance of the evidence is against these claims.

The Board has considered whether referral of these matters for consideration of an extraschedular rating is warranted, but finds that all identified symptoms and impairment associated with the Veteran's bilateral knee and ankle disabilities (essentially pain and limitation of motion) are encompassed by the criteria for the schedular ratings assigned. She has not alleged any manifestations or functional impairment that is not encompassed by the schedular criteria. Therefore, those criteria are not inadequate, and referral for consideration of an extraschedular rating is not necessary. Thun v. Peake, 22 Vet. App. 111 (2008). 

The record does not suggest, nor has the Veteran alleged, that her bilateral knee or ankle disabilities prevent her from being gainfully employed; there is no indication in the record that by virtue of these disabilities she is rendered incapable of gainful employment. The August 2015 VA examiner found that the Veteran's bilateral ankle disability had a slight impact on employment, noting that the impact related to pain with prolonged standing and walking, but did not suggest that she was unable to work. Accordingly, the matter of entitlement to a total rating based on individual unemployability due to service-connected disability rating is not raised in the context of the instant claim for increase.

 
ORDER

Ratings for right knee disability in excess of 10 percent prior to March 6, 2012 and/or in excess of 20 percent (combined) from that date are denied.

Ratings for left knee disability in excess of 10 percent prior to March 6, 2012 and/or in excess of 20 percent (combined) from that date are denied.

A rating in excess of 10 percent for right ankle disability is denied.

A rating in excess of 10 percent for left ankle disability is denied.

____________________________________________
GEORGE R. SENYK 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs